**Jason Michael HERNANDEZ,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–01031–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 30, 2003.

Discretionary Review Refused
April 21, 2004.

Jason Michael Hernandez, Huntsville, Kurt B. Wentz, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, Eric Kugler, Assistant District Attorney of Harris County, William J. Delmore, III, Chief Prosecutor, Appellate Division, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Jason Michael Hernandez, of murder and assessed his punishment at 60 years in prison. *See* TEX. PEN.CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). We determine (1) whether the evidence supporting the jury's negative finding on a sudden-passion special issue at punishment was factually sufficient, (2) whether appellant carried his burden of showing that his counsel was ineffective at the guilt phase, and (3) whether the trial court committed reversible error in preventing appellant's psychologist from giving expert-opinion testimony relating to the sudden-passion issue. We affirm.

## Background

Appellant and Cynthia Cruz, the complainant, had been dating for several months. To celebrate having moved into a new apartment together, they had a party. Late that night, appellant, his uncle, and his cousin got into a fight at the party. Someone called for an ambulance when the cousin got out of control. Cruz accompanied the cousin to the emergency room in the ambulance. Appellant appeared somewhat intoxicated, angry, and belligerent, but he became "really ... angry" and "very upset" when Cruz went with his cousin in the ambulance, so much so that an officer had to tell him to calm down.

Appellant called the police again around five o'clock the next morning. When investigating officers arrived at appellant's apartment, they found Cruz's corpse against the bathtub. She had been stabbed or cut 21 times and had evidence of blunt-force trauma to her head. Appellant had soaked her body in so much bleach that the odor permeated the apartment.

## Factual Sufficiency

In issue one, appellant raises a factual-sufficiency challenge to the jury's negative answer to the sudden-passion special issue in the punishment charge.

■ Murder is a first-degree felony. *See* TEX. PEN.CODE ANN. § 19.02(c). However, "at the punishment stage of a trial,

the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." [1] *See id.* § 19.02(d) (Vernon 2003). " 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2) (Vernon 2003). " 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1) (Vernon 2003). Ordinary anger or causes of a defendant's own making

are not legally adequate causes. *Naasz v. State,* 974 S.W.2d 418, 423 (Tex.App.-Dallas 1998, pet. ref'd).

■ Both parties assert that we may conduct a factual-sufficiency review of the evidence underlying the jury's negative finding on sudden passion. Neither this Court nor the Court of Criminal Appeals has yet determined whether factual-sufficiency review is available for this particular punishment issue. However, some of our sister courts of appeals have generally held that such review lies.[2] We agree with the courts that have so held for the reasons that they have expressed:

• The sudden-passion punishment finding concerns issues of historical fact, rather than issues that are more subjective or that constitute a prediction.

• Factual-sufficiency review lies to challenge the rejection of an affirmative defense, and the rejection of a sud-

---

1. Both degrees of felony allow an optional fine of up to $10,000, but the punishment range for a first-degree felony is five to 99 years or life. Tex. Pen.Code Ann. § 12.32 (Vernon 2003). In contrast, the punishment range for a second-degree felony is two to 20 years. *Id.* § 12.33 (Vernon 2003).

2. Seven courts of appeals have either so held or so noted, some repeatedly. *See Amador v. State,* 2003 WL 21204971 at *3 (Tex.App.-Dallas May 23, 2003, no pet.) (not designated for publication); *Crosby v. State,* 2003 WL 21000196 at *3 (Tex.App.-Dallas May 5, 2003, no pet.) (mem. op.; not designated for publication); *Hutchins v. State,* 2002 WL 31769017 at *4 (Tex.App.-Austin Dec. 12, 2002, pet. ref'd) (not designated for publication); *Vasquez v. State,* 84 S.W.3d 269, 271 (Tex.App.-Corpus Christi 2002, no pet.); *Richardson v. State,* 83 S.W.3d 332, 336 (Tex.App.-Corpus Christi 2002, pet. ref'd); *Bradfield v. State,* 42 S.W.3d 350, 352 (Tex.App.-Eastland 2001, pet. ref'd) (noting same in dictum); *Beaver v. State,* 2001 WL 200128 at *2 (Tex.App.-Dallas Mar. 1, 2001 pet. ref'd) (not designated for publication); *Tello v. State,* 2001 WL 193808 at *3 (Tex.App.-Austin Feb. 28, 2001, no pet.) (not designated for publica-

tion); *Smith v. State,* 2000 WL 108136 at *5-6 (Tex.App.-Texarkana Feb. 1, 2000, pet. ref'd) (not designated for publication); *Brena v. State,* 1999 WL 606681 at *2 (Tex.App.-Amarillo Aug. 11, 1999, pet. ref'd) (not designated for publication); *Moss v. State,* 1999 WL 222843 at *5 (Tex.App.-Dallas Apr. 19, 1999, no pet.) (not designated for publication); *Dudley v. State,* 992 S.W.2d 565, 569 (Tex.App.-Texarkana 1999, no pet.); *Edwards v. State,* 1999 WL 164120 at *2 (Tex.App.-Dallas Mar. 26, 1999, no pet.); *Naasz v. State,* 974 S.W.2d 418, 420-22 (Tex.App.-Dallas 1998, pet. ref'd); *Bumguardner v. State,* 963 S.W.2d 171, 176 (Tex.App.-Waco 1998, pet. ref'd); *James v. State,* 1998 WL 17753 at *5 (Tex.App.-Amarillo Jan. 20, 1998, no pet.) (not designated for publication); *Rainey v. State,* 949 S.W.2d 537, 542 (Tex.App.-Austin 1997, pet. ref'd). *But see Forbes v. State,* 2000 WL 19156 at *2 (Tex.App.-Houston [14th Dist.] Jan. 13, 2000, pet. ref'd) (although holding that sudden-passion finding was "not ... contrary to overwhelming weight of evidence ...," refusing to apply factual-sufficiency review under standard of *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996), until high court ruled on application of *Clewis* at punishment).

den-passion mitigation issue at punishment is analogous to the rejection of an affirmative defense at the guilt phase because the burden of proof for both issues rests on the defendant by a preponderance of the evidence.

*See Smith v. State,* 2000 WL 108136 at *5–6 (Tex.App.-Texarkana Feb. 1, 2000, pet. ref'd) (not designated for publication); *Naasz,* 974 S.W.2d at 421, 423; *see also Wilson v. State,* 15 S.W.3d 544, 549 n. 4 (Tex.App.-Dallas 1999, pet. ref'd) (dictum).

Moreover, the Court of Criminal Appeals has recently held that factual-sufficiency review lies over the "deliberateness" punishment issue [3] in capital cases for offenses committed before September 1, 1991 because that issue involves "an assessment of events that have already occurred" and requires "a finding of historical fact that is either right or wrong at the time of trial." *See Wardrip v. State,* 56 S.W.3d 588, 590–91 (Tex.Crim.App. 2001). *Compare McGinn v. State,* 961 S.W.2d 161, 168–69 (Tex.Crim.App.1998) (holding that future-dangerousness punishment issue in capital case is not subject to factual-sufficiency review because, among other reasons, that issue is one of prediction, not historical fact, and is thus highly subjective). And this Court has recently held that the rejection of a similar punishment mitigation issue, on which the defendant also has the burden of proof by a preponderance of the evidence, is reviewable for factual sufficiency. *See Patterson v. State,* Nos. 01–00–01148–CR, 01–00–01149–CR, 121 S.W.3d 22, 24 (Tex.App.-Houston [1st Dist.] June 19, 2003, no pet. h.) (op. on remand; designated for publication) (reviewing for factual sufficiency jury's negative finding on punishment miti-gation issue, which would have reduced offense to second-degree felony under Tex. Pen.Code Ann. § 20.04(d) (Vernon 2003), asking whether defendant had voluntarily released kidnaping victim in safe place). Accordingly, we hold that we may conduct a factual-sufficiency review of the evidence relevant to the sudden-passion mitigation finding.

When determining the factual sufficiency of the evidence, we review all of the evidence neutrally. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). The defendant bears the burden of proving both a sudden-passion issue at punishment and an affirmative-defense issue at guilt by a preponderance of the evidence. *See* Tex. Pen.Code Ann. § 2.04(d) (Vernon 2003) (affirmative-defense burden); *id.* § 19.02(d) (sudden-passion burden). Because the defendant's burden is the same for both issues, we apply to appellant's challenge of the sudden-passion finding the same standard of review that we would apply to a challenge of the rejection of an affirmative defense. *See Naasz,* 974 S.W.2d at 421. That standard requires us to determine whether the negative finding is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *See id.* at 421–22; *see also Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim.App.2003) (designating same standard of review for factfinder's rejection of affirmative defense at guilt phase). The factfinder is the sole judge of the weight and credibility of witnesses' testimony. *Johnson,* 23 S.W.3d at 7.

Appellant relies on the following evidence for his factual-sufficiency chal-

**3.** *See* Tex.Code Crim. Proc. Ann. art. 37.0711, § 3(b)(1) (Vernon Supp.2003) ("On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury: (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result; ....").

lenge. Appellant's evidence showed that, in general, Cruz suffered from depression and bipolarism; that she sometimes did not take her medication for these disorders or mixed that medication with alcohol; that she had been hospitalized for depression and drug-related illness; that she "had a lot of problems with her past and her children"; and that she lied to, argued with, and "used" appellant and his family. Relevant to the attack, appellant testified that he felt like he was "in a nightmare" during the attack, that he passed out right after the stabbing, and that he didn't remember stabbing her so many times or dousing her in bleach. Appellant further testified that, right before the murder, Cruz woke him by kicking and slapping him, that he and Cruz argued, that she challenged his masculinity, that she criticized the size of his penis, and that she said that she would leave him for another man—all of which made appellant "even more angry" and "very hurt" and which caused "something just [to come] out of

me." Appellant's mother testified that Cruz seemed depressed and angry on the morning of the murder.

 Some of the testimony on which appellant relies concerned his past experiences with Cruz, and the State produced ample contrary evidence, some from appellant himself, that he acted on past provocation.[4] Sudden passion must arise at the time of the offense and cannot result solely from former provocation.[5] See Tex. Pen. Code Ann. § 19.02(a)(2). Appellant further testified that, when he killed Cruz, he was also thinking about how other people had disrespected or abused him in the past. Provocation by people other than the victim or one acting with her does not meet the definition of sudden passion. See id. To the extent that appellant's testimony concerned his mental state at the time of the stabbing, there was ample evidence that, if believed, would support the jury's finding that appellant did not act under sudden passion.[6] Moreover, causes that

4. For example, appellant testified that he grabbed the knife in the first place because he had "had enough" of and was "tired of" Cruz's behavior and knew that, if he let her go, she would "keep coming back." He also admitted that "the real thing that [he was] mad about" when he killed Cruz was her past actions, "not anything that happened that night."

5. Citing *Mason v. State,* appellant claims that "prior antagonism and insulting conduct can be considered in determining whether the conduct and words surrounding the death" were sufficient to produce sudden passion. *See id.,* 798 S.W.2d 854 (Tex.App.-Houston [14th Dist.] 1990, no pet.). We do not disagree that the victim's past conduct can help place in context the victim's provocation at the time of the offense. However, we note that the *Mason* court did not hold as appellant claims and does not support appellant's challenge. Rather, the *Mason* court held that passion resulting solely from former provocation, which was all that the evidence in that case supported, did not constitute sudden pas-

sion or adequate cause, so as to require an instruction on the lesser offense of involuntary manslaughter (the predecessor to the sudden-passion issue). *Id.* at 856.

6. For example, appellant was very angry at Cruz for accompanying his cousin in the ambulance, but he did not kill her then; rather, he went to sleep while she was gone and then killed her when she returned from the emergency room. Appellant's recorded statements and his cross-examination responses also indicated that he did not pass out after the stabbing—contrary to other portions of his trial testimony—but that he instead first cleaned the knife, then poured bleach on Cruz to cover any smell, and then disposed of the bleach bottle in a dumpster. When the emergency medical technicians tried to reposition Cruz's body later that morning, appellant told them not to drag "that bitch" on his new carpet. One technician testified that appellant appeared to be more worried about his carpet or apartment than about Cruz and acted "kind of happy-go-lucky, just standing there like nothing happened, no big deal."

would not render the ordinary person's mind incapable of cool reflection do not constitute adequate cause. *See id.* at § 19.02(a)(1). In this vein, appellant acknowledged that couples sometimes break up because one partner wishes to date someone else and that that is normal and is not a reason to kill. Additionally, given appellant's changing story about the circumstances of the killing,[7] the jury could have disbelieved appellant's testimony that Cruz had incited him to more than ordinary anger. *See Naasz,* 974 S.W.2d at 423 (stating that mere anger does not constitute adequate cause); *Dudley v. State,* 992 S.W.2d 565, 569 (Tex.App.-Texarkana 1999, no pet.) (in overruling factual-sufficiency challenge to finding on sudden-passion issue, noting, "Given the conflicting testimony involved and that the jury is the sole judge of the weight and credibility of the evidence, there is plenty of room to disbelieve [the defendant's] version of the facts and to believe [another witness's] version.").

Accordingly, we hold that the jury's answer to the sudden-passion special issue is not so against the great weight and preponderance of the evidence as to be manifestly unjust or clearly wrong.

We overrule issue one.

### Ineffective Assistance of Counsel

In issue four, appellant argues that, at the guilt phase, his trial counsel was ineffective under the Federal Constitution for not objecting to the State's asking a detective whether appellant's first recorded statement was entirely truthful. *See* U.S. CONST. amend. VI.

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). *See Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999) (applying *Strickland* standard at punishment phase of non-capital trial). Appellant must show both that (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the Sixth Amendment and (2) there is a reasonable probability that, but for counsel's error or omission, the result of the proceedings would have been different, *i.e.,* sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 687–96, 104 S.Ct. at 2064–69. Effective assistance of counsel does not mean errorless counsel.

Similarly, appellant did not appear or sound "shaken or upset" either when discussing the incident with investigating officers or in his recorded statements. Concerning Cruz's provocation, appellant's mother testified that Cruz seemed angry, but not violent, when she dropped Cruz back at appellant's apartment that morning. Indeed, the few marks on appellant's body were not defensive wounds or indicative of a struggle for life, and appellant admitted at punishment that Cruz had not first attacked him with any weapon, contrary to what he had said in two statements to the police.

7. For example, in his first statement at the scene, appellant said that, after Cruz had left the apartment the night before, he had fallen asleep and later awakened to find Cruz's body in the bathroom. In contrast, in two recorded statements taken later that morning, appellant stated that Cruz had awakened him when she returned from the hospital, that Cruz had struck and kicked him repeatedly; that, in the struggle, Cruz had attacked him with a butcher knife and a fork; and that he had stabbed Cruz two to four times. Additionally, even the two recorded statements differed on whether appellant or Cruz had torn down a shower curtain in the process of falling into the bathtub during their struggle. At trial, in addition to the inconsistencies already noted from his testimony, appellant admitted that, in both recorded statements, he had lied about Cruz's having attacked him with weapons and about a few other, ancillary matters.

*See Saylor v. State,* 660 S.W.2d 822, 824 (Tex.Crim.App.1983). In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson,* 9 S.W.3d at 813.

■■■■■ It is the defendant's burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson,* 9 S.W.3d at 813. A defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Assertions of ineffective assistance of counsel must be firmly founded in the record. *Bone v. State,* 77 S.W.3d 828, 835 (Tex. Crim.App.2002). We will normally not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy. *See Henderson v. State,* 29 S.W.3d 616, 624 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *Gamble,* 916 S.W.2d at 93. However, "in the rare case where the record on direct appeal is sufficient to prove that counsel's performance was deficient, an appellate court should obviously address the claim...." *Robinson v. State,* 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000).

■■■■ Houston Police Department Homicide Detective Abbondandolo testified that, on the morning of the murder, he observed no defensive wounds on appellant and that appellant "was [not] rumpled or messed up at all." At the scene, appellant appeared surprised when he learned that Cruz was dead and told the detective that,

after Cruz had left the apartment the night before, he had fallen asleep and later awakened to find Cruz's body in the bathroom. The detective recorded a statement by appellant later that morning. In that statement, appellant recounted that Cruz had awakened him when she returned from the hospital; that Cruz had struck and kicked him repeatedly; that Cruz had attacked him with a butcher knife; that they had fought and struggled while she had the knife; that he had eventually gotten the knife from her, but that she had then tried to attack him with a fork; [8] that he had stabbed her two to four times with the knife, [9] and that he was wearing the same clothes that he had worn during the stabbing. After having published appellant's recorded statement to the jury, the detective again testified that the few marks on appellant's body were not the type that the detective would have expected to see on someone who had been defending himself or struggling for his life. The State then asked, "Based on your observations of the defendant's demeanor, did you make a determination as to whether the entire story that the defendant told you in [the first recorded statement] was true and correct?" Detective Abbondandolo answered that he did not think that the recorded statement was true and correct.[10] Counsel did not object.

Counsel's not objecting to the detective's answer could have resulted from valid trial strategy, and we presume that it was unless the record shows otherwise. *See Gamble,* 916 S.W.2d at 93. Nothing shows

**8.** Another officer later testified that appellant had no visible fork wounds on his body.

**9.** Cruz had 21 stabbing and cutting wounds to her body, including some to the face; some on and near the ear; multiple stabbing wounds to the abdominal area; and evidence of blunt-force trauma to her body. The detective had viewed the body before recording appellant's statement.

**10.** The detective later clarified that appellant's lack of injuries was inconsistent with appellant's story.

trial counsel's reasons for not objecting.[11] This is not one of those "rare cases" in which we can assess counsel's performance on a silent record. *See Robinson,* 16 S.W.3d at 813 n. 7. We hold that appellant did not carry his burden of showing that counsel was ineffective for not objecting to the detective's testimony. *See Henderson,* 29 S.W.3d at 624; *Gamble,* 916 S.W.2d at 93.

We overrule issue four.

### Appellant's Expert Witness

In issues two and three, appellant argues that the trial court erred in refusing to allow his psychiatric expert, Dr. Milton Altschuler, to testify at the punishment phase (1) about appellant's mental state at the time of the killing, in support of appellant's sudden-passion issue, and (2) about appellant's alleged dissociative disorder, in support of appellant's sudden-passion issue and to explain appellant's behavior after the killing.

### A. Waiver

The State claims that appellant waived these challenges because he allegedly (1) did not obtain a ruling excluding the doctor's testimony, then voluntarily withdrew the doctor's testimony, and (2) made no offer of proof showing that the doctor would have testified to these two things.

**1. Dr. Altschuler's expert opinion concerning appellant's mental state at the time of the murder**

To preserve error in the exclusion of evidence, a party must make a sufficient offer of proof and obtain a ruling. *See* Tex.R.App. P. 33.1(a)(1)(A), (B); Tex.R. Evid. 103(a)(2), (b). The proponent's burden is to ensure that "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." Tex.R. Evid. 103(a)(2).

During the punishment phase, the State asked to question Dr. Altschuler outside the jury's presence because, although appellant had designated the doctor as an expert witness, appellant had not disclosed the substance of the doctor's testimony. The parties and the trial court then discussed Dr. Altschuler's testimony for 30 pages of the record. During that hearing, Dr. Altschuler testified that he believed that appellant had a dissociative or psychiatric disorder. Contrary to the State's assertion, everyone understood that appellant wished Dr. Altschuler to testify, in support of the sudden-passion special issue, about appellant's state of mind at the time of the murder and about how appellant's dissociative or psychiatric disorder had affected his mental state at that time.[12]

Appellant also obtained a ruling. The State wished to exclude Dr. Altschuler's testimony entirely. The trial court denied that blanket request, instead ruling that appellant could call Dr. Altschuler for "whatever purpose" that he wished—subject to one important exception, which the

---

**11.** For example, appellant moved for a new trial and presented evidence in support, but he did not assert counsel's ineffectiveness as a new trial ground or produce evidence on that topic.

**12.** The substance of the doctor's expert opinion was revealed both by the doctor's voir dire testimony and by counsel's summary of the doctor's opinion. That sufficed as an

offer of proof. *See* Tex.R. Evid. 103(b) ("The court *may, or at the request of a party shall,* direct the making of an offer in question and answer form.") (emphasis added); *Love v. State,* 861 S.W.2d 899, 901, 903 (Tex.Crim. App.1993) (indicating that counsel's summary of excluded evidence can suffice as offer of proof if no one requests that offer be made in question-and-answer form).

State does not mention—and that the State could object and obtain rulings during testimony before the jury.[13] The important exception was that the trial court would not allow Dr. Altschuler to testify about appellant's state of mind. The trial court repeatedly indicated that it was *presently* ruling that this line of testimony was prohibited. Accordingly, that ruling was not part of the trial court's general in limine ruling, and the court's ruling prohibiting testimony on appellant's mental state thus sufficed to preserve error. *Compare Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex.Crim.App.1994) (holding that ruling on pretrial motion in limine does not preserve error) *with* Tex.R.App. P. 33.1(a)(2)(A) (requiring for preservation that court "[rule] on the request, objection, or motion, either expressly or implicitly . . . .").

▮ And appellant did not waive that ruling by then deciding not to present Dr. Altschuler's testimony. It was apparently *because* the trial court had ruled that appellant could not call the doctor to testify on appellant's mental state at the time of the murder that appellant decided to take the stand to give evidence on this topic, with the doctor staying on as only a consulting expert. Accordingly, appellant did not waive the trial court's ruling excluding the doctor's testimony on this ground.

**2. Dr. Altschuler's expert opinion concerning how appellant's dissociative disorder affected appellant's behavior after the murder**

▮ In contrast, appellant never mentioned during the voir dire hearing that Dr. Altschuler would have testified about how appellant's dissociative disorder accounted for appellant's behavior *after* the killing.[14] Therefore, appellant waived any argument that the trial court erred in excluding Dr. Altschuler's expert opinion concerning how appellant's dissociative disorder affected appellant's behavior after the murder. *See* Tex.R.App. P. 33.1(a)(1)(A), (B); Tex.R. Evid. 103(a)(2).

**B. Merits**

At the hearing, the trial court expressed four areas of concern: (1) the court was unsure exactly to what Dr. Altschuler would testify as an expert;[15] (2) the doctor's testimony was a way of presenting appellant's own self-serving statements without appellant's taking the stand; (3) the trial court suspected that an expert could not testify about a defendant's state of mind; and (4) appellant had to show that the doctor's expert testimony was reliable under the factors of *Daubert*[16] and

---

13. It is probably for this reason that the trial court twice referred to its ruling as one granting the State's "motion in limine."

14. In support of his issue three, appellant relies on Dr. Altschuler's affidavit, which was attached to appellant's motion for new trial and was considered by the trial court at the new trial hearing. However, to complain of the ruling excluding the doctor's testimony, appellant had to make an offer of the excluded testimony "as soon as practicable, but before the court's charge [was] read to the jury." Tex.R. Evid. 103(b); *see Walker v. State*, 2001 WL 549175 at *4 n. 2 (Tex.App.-Houston [1st Dist.] May 24, 2001, pet. ref'd) (not designated for publication). Waiting to

make an offer of proof until filing his motion for new trial did not suffice. *See Walker*, at *4 n. 2. Neither do appellant's issues two and three challenge the propriety of the trial court's denial of his motion for new trial. Accordingly, we do not consider the doctor's new trial affidavit when assessing the validity of the trial court's evidentiary ruling.

15. This ground is the reason that the State initially asked for a hearing outside the jury's presence.

16. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

*Kelly*.[17] We need to discuss only the last ground: reliability of the doctor's expert testimony.

■ The State did not contest Dr. Altschuler's credentials as a psychiatrist. Neither did the trial court. Rather, the trial court repeatedly asserted that appellant had to show that Dr. Altschuler's expert opinion was reliable under the standards adopted in *Kelly* and *Daubert*. Appellant not only did not object to the application of *Kelly* and *Daubert*, but assumed that those standards applied and tried to prove up what he believed those standards to be.[18]

■ We review the trial court's decision on the qualifications of an expert or the reliability of his testimony for an abuse of discretion. *See Hernandez v. State*, 53 S.W.3d 742, 750 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). An expert may testify on scientific, technical, or other specialized subjects if the testimony would assist the factfinder in understanding the evidence or determining a fact issue. *See* Tex.R. Evid. 702. The trial court may

exclude scientific testimony or evidence that is not reliable. *See id.*

■ "[E]vidence derived from a scientific theory, to be considered reliable, must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question." *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992); *see also Hartman v. State*, 946 S.W.2d 60, 62–63 (Tex.Crim.App.1997) (applying *Kelly* standard to all scientific evidence, whether novel or not, that is offered under Tex.R. Evid. 702). "Factors that could affect a trial court's determination of reliability include, but are not limited to, the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the tech-

---

17. *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim. App.1992).

18. Dr. Altschuler's opinion was not based on "hard science." *See Muhammad v. State*, 46 S.W.3d 493, 506 (Tex.App.-El Paso 2001, no pet.) (holding that psychology falls within the ambit of "soft science" for purposes of determining reliability of expert testimony); *cf. Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 604 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (concluding that treating physician's medical-causation testimony, which was based on a differential diagnosis, was not based on "hard science"). Because the "hard science methods of validation [suggested in *Kelly*], such as assessing the potential rate of error or subjecting a theory to peer review, may often be inappropriate for testing the reliability of fields of expertise outside the hard sciences," the pertinent questions that a court may ask in determining whether such an expert's opinion is reliable are (1) whether

the field of expertise is a legitimate one; (2) whether the subject matter of the expert's testimony is within the scope of that field; and (3) whether the expert's testimony properly relies upon or utilizes the principles involved in the field. *Hernandez*, 53 S.W.3d at 750 (citing *Nenno v. State*, 970 S.W.2d 549, 561 (Tex.Crim.App.1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App.1999)). Accordingly, appellant could have argued that the three, more flexible factors identified in *Nenno* and *Hernandez*, rather than the "hard science" factors suggested in *Kelly*, applied to Dr. Altschuler's opinion testimony. However, appellant never argued that the more flexible standards of *Nenno, Hernandez,* or cases like them applied; rather, he accepted the trial court's repeated indications that the "hard science" standards suggested in *Kelly* and *Daubert* applied and thus assumed the burden of proving those standards.

nique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question." *Kelly*, 824 S.W.2d at 573 (original emphasis removed). The *Kelly* inquiry is "substantively identical to the inquiry mandated by the Supreme Court . . . in *Daubert*. . . ." *Nenno v. State*, 970 S.W.2d 549, 560 (Tex.Crim. App.1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim.App.1999). Appellant had the burden to show the trial court that Dr. Altschuler's testimony was reliable. *See Kelly*, 824 S.W.2d at 573.

■ The parties raised, and the trial court was clearly concerned about, the reliability of the doctor's expert opinion; accordingly, on appeal, appellant must challenge this possible basis for the trial court's ruling. However, other than mentioning that the trial court raised the *Daubert* issue at the hearing, appellant does not include argument in his brief on the propriety of excluding Dr. Altschuler's testimony under *Daubert* or *Kelly*.[19] The only case discussing *Kelly* or its progeny that appellant cites is *Muhammad v. State*, 46 S.W.3d 493, 506–09 (Tex.App.-El

Paso 2001, no pet.). In addition to discussing reliability under *Kelly*, however, the *Muhammad* court also separately discussed relevancy under Code of Criminal Procedure article 37.07, section 3(a). *See Muhammad*, 46 S.W.3d at 498–99, 500–02; *see also* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2003). Both of these holdings of *Muhammad* are relevant to what the trial court discussed at the voir dire hearing in this case. However, it is unclear from appellant's brief for which holding he cites *Muhammad*, and, if anything, he appears not to rely on *Muhammad*'s *Kelly* holding.[20]

Even were we to construe appellant's reference to *Muhammad* to assert a challenge under *Kelly*, we would overrule that challenge. After having assumed the burden to prove reliability under the standards announced in *Kelly* and *Daubert*, appellant had Dr. Altschuler testify mainly to his credentials, which no one contested. Other than that, the record showed that Dr. Altschuler had testified occasionally for the State, for criminal defendants, and for civil plaintiffs and that he had based his opinion in this case on "reasonable medical probability"; "historical data"; "mainstream psychiatry which talks about [appellant's] home history in various

---

19. Rather, appellant generally argues that Dr. Altschuler's expert opinion (1) was not inadmissible for being based on hearsay (Tex.R. Evid. 703); (2) was admissible because the doctor had specialized training in the area of his opinion and his testimony would have assisted the jury (Tex.R. Evid. 702); (3) was not objectionable for embracing an ultimate issue to be decided by the jury, *i.e.*, mental state (Tex.R. Evid. 704); and (4) was admissible under Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2003) (concerning relevancy of evidence at punishment phase) and under *Peters v. State*, 31 S.W.3d 704 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd), which did not concern reliability of expert testimony under *Kelly* or its progeny.

20. Appellant states, "Dr. Altschuler's testimony would have confirmed that the Appellant acted in an excited emotional state as a result of a multitude of factors and that his lack of remorse was a result of dissociative mental disorders. In *Muhammad v. State*, . . . the court was confronted with an almost identical set of facts and concluded that the evidence should have been admissible." Appellant continues, "The failure to allow an expert to testify was found harmful in the aforementioned cases of *Peters v. State* and *Muhammad v. State*."

symptoms and issues that occur"; and the "DSM–IV study" on dissociative disorders, which study is "very much within mainstream psychology" and is "well recognized." However, the doctor had generated no written report, and, other than briefly mentioning that he had applied the DSM–IV, he did not explain on what other "mainstream psychiatry" studies or techniques he relied, how he had applied those studies or techniques to appellant. Likewise, the doctor did not identify the "historical data" on which he based his opinion concerning appellant's mental state.[21] On this record, we hold that the trial court did not abuse its discretion in excluding Dr. Altschuler's testimony. *Muhammad* is distinguishable because, in that case, the proffered expert testified specifically on voir dire as to which tests he applied, what the defendant's results were under those tests, and what conclusions he drew from those tests. *See id.,* 46 S.W.3d at 497, 506.

We overrule issues two and three.

### Conclusion

We affirm the judgment of the trial court.

---

21. Appellant asked for a continuance in order better to prepare to show that the doctor's opinion was reliable under *Kelly* and *Daubert,* but the trial court denied that request. Appellant does not challenge that ruling on appeal.