Opinion issued June 14, 2007








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00368-CR






PABLO VELEZ, JR., Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 176th District Court

Harris County, Texas

Trial Court Cause No. 997162






MEMORANDUM OPINION

 A jury convicted appellant, Pablo Velez, Jr., of murder and assessed
punishment at 30 years' confinement. In points of error one, two, and six, appellant
contends the evidence is legally insufficient. In points of error three, four, and seven,
appellant contends the evidence is factually insufficient. In point of error five,
appellant contends the trial court erred by including a charge on the law of parties. 
In point of error eight, appellant contends the trial court erred by excluding relevant
evidence. We affirm.

BACKGROUND 

 On Wednesday, July 14, 2004, and into the early hours of Thursday, July 15,
2004, Claudia Beltran and her friend, Nancy Almanza, were at the Perfect Rack pool
hall. Adrian Payan, who is the father of Beltran's child, came by the pool hall several
times during the evening looking for several men who had beaten him up earlier in
the week. At closing time, Beltran called Payan to come back to the pool hall because
Jason Wooley wanted to fight him. Payan was accompanied by his friends, Esteban
Rodriguez, and the complainant, Emerson Bojorquez. Payan and Rodriguez got out
of the car and approached the front of the pool hall where Beltran, Almanza, and
Wooley were standing. Payan thought that Bojorquez had remained in the car.

 As Payan and Rodriguez walked toward the pool hall, Beltran pointed toward
Wooley, who was wearing a red shirt. Wooley then pulled out a gun and fired a shot. 
As Payan and Rodriguez turned to run, they heard other shots being fired from other
guns in the parking lot. 

 Beltran, who was standing near Wooley when he fired his gun, also saw a man
in a blue shirt with a long gun standing near a gold Cadillac in the parking lot. After
the shots began, Wooley and the man in the blue shirt chased after Payan and
Rodriguez for a while before returning to the parking lot and leaving in the gold
Cadillac. Beltran and her friend, Almanza, got in Beltran's car and followed the gold
Cadillac. Almanza memorized the first part of the gold Cadillac's license plate
numbers, and Beltran memorized the last part of the license plate numbers. Beltran
then wrote the number down on her Bible using her eyeliner.

 Beltran and Almanza then returned to the Perfect Rack, where they found
Payan, who had been shot in the back. They also discovered Bojorquez lying dead
on the sidewalk near the spot where Beltran had seen the man in the blue shirt emerge
from between the cars in the parking lot.

 The police later identified the gold Cadillac as belonging to appellant, and
Beltran identified appellant from a photo array as the man she had seen wearing the
blue shirt. Police officers found three clusters of shell casings at the scene, which led
them to believe that multiple shooters had participated in an "ambush."

SUFFICIENCY OF THE EVIDENCE

 In points of error one, two, and six, appellant contends the evidence is legally
insufficient to support his conviction, either as a principal or as a party. In points of
error three, four, and seven, appellant contends the evidence is factually insufficient
to support his conviction, either as a principal or as a party. Specifically, appellant
contends there is no evidence that he was present at the scene of the shooting. 

Standards of Review

 In reviewing a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000). When conducting a factual-sufficiency review, we view
all of the evidence in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997). We will set the verdict aside only if (1) the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11. Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 

 Under the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the verdict. Under the
first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Id. Before finding that evidence is
factually insufficient to support a verdict under the second prong of Johnson, we must
be able to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Id. In conducting a
factual-sufficiency review, we must also discuss the evidence that, according to the
appellant, most undermines the jury's verdict. See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King, 29 S.W.3d at 562. The fact-finder alone determines what weight
to place on contradictory testimonial evidence because that determination depends
on the fact-finder's evaluation of credibility and demeanor. Cain, 958 S.W.2d at
408-09. As the determiner of the credibility of the witnesses, the fact-finder may
choose to believe all, some, or none of the testimony presented. Id. at 407 n. 5.

The Law

 A person commits murder if he intentionally or knowingly causes the death of
an individual or intends to cause serious bodily injury and intentionally or knowingly
commits an act clearly dangerous to human life that causes the death of an individual. 
Tex. Pen. Code Ann. § 19.02(b)(1) & (2) ( (Vernon 2003). The indictment alleged
that appellant (1) intentionally and knowingly caused the death of Emerson
Bojorquez by shooting him with a deadly weapon, namely a firearm; or (2) intended
to cause serious bodily injury to Emerson Bojorquez and did cause the death of
Bojorquez by intentionally committing an act clearly dangerous to human life, namely
by shooting Bojorquez with a deadly weapon, a firearm.

 The jury charge included an instruction on the law of parties. A person is
criminally responsible as a party to an offense is the offense is committed by the
conduct of another for which he is criminally responsible. Tex. Pen. Code Ann. §
7.01(a) (Vernon 2003). A person is criminally responsible for an offense committed
by the conduct of another if, acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person
to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). To
determine whether a defendant participated as a party in the commission of an
offense, the fact finder may look to events that occurred before, during, or after the
offense, and may place reliance on acts showing an understanding and common
design. Ranson v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996). An
agreement of the parties to act together in a common design seldom can be proven by
direct evidence; reliance may therefore be placed upon the actions of the parties,
showing either by direct or circumstantial evidence an understanding and common
design to do a certain act. Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App.
1986).

Legal Sufficiency

 The evidence shows that Claudia Beltran saw a man she later identified as
appellant holding a gun in the parking lot. Appellant was standing near the area
where Bojorquez was later found dead. After hearing gunfire from several locations,
Beltran saw appellant and Wooley chasing Payan and Rodriguez through the parking
lot. She then saw appellant and Wooley return, get into the gold Cadillac, and leave. 
Beltran and Almanza followed the gold Cadillac and wrote down its license plate
number. The police determined that appellant owned the gold Cadillac. The police
also showed Beltran a photo array, from which she positively identified appellant as
the shooter she had seen wearing the blue shirt. The police also determined that there
were likely multiple shooters involved in the "ambush-type" shooting.

 Based on these facts, a rational trier of fact could have found appellant guilty
of the offense, either as a principal actor, or by aiding and abetting Wooley. 
Accordingly, we overrule points of error one, two, and six.

Factual Sufficiency

 Appellant argues that the evidence is factually insufficient because of the
following reasons:

 1. Although Beltran positively identified appellant as the man she had
seen in the blue shirt, she was unable to identify him at trial.

 

 2. Appellant testified that he was working as a truck driver and did not
arrive in Houston until after midnight on July 15, 2004, and when he got
home he spent the night with his ex-girlfriend, Anel Pina.

 

 3. Appellant explained the presence of the gold Cadillac at the scene by
saying that he had given the car to Ron Strandberg, who took over the
payments on it. He also introduced evidence that Strandberg had taken
the car to have a radio installed on July 8. He also testified that
Strandberg told him to come pick up the car a few weeks after the
shooting, which he did, returning it to the dealership. A friend who
accompanied him to the dealership thought that it was probably on a
Sunday afternoon.


 The State, however, presented evidence that Beltran positively identified
appellant in a photo array shortly after the shooting. She took no more than 4 seconds
to point him out to police officers.

 A police officer also testified that it took him only 28 minutes to drive from the
trucking company, where appellant arrived at midnight, to the pool hall. The
shooting did not occur until the bar closed around 2 a.m. From this the jury could
have concluded that appellant had time to park his truck, get his gold Cadillac, and
go to the bar for closing time.

 Appellant denied going to the bar that night, but stated that he spent the night
with his ex-girlfriend Anel Pina. Pina, however, testified that appellant did not stay
at her house that night, because her work records showed that she worked on the 15th,
and he had not stayed over on a night when she had to work the next day. She
remembered that he did not come over until July 29. Appellant called Pina and tried
to convince her that he had been with her on the night of the 14th and he wanted her
to tell that to the police. She, however, refused, because she knew it was not true. 
Appellant seemed angry when Pina would not agree with him about the date.

 Regarding the gold Cadillac, the State introduced evidence that appellant told
them he returned the car to the dealership the day after the shooting, not several
weeks later as he claimed at trial.

 The jury, as fact finder, was entitled to believe the State's version of the
evidence and disbelieve appellant's version. After reviewing all of the evidence in
a neutral light, we cannot say that the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) that the verdict is against the great weight and
preponderance of the evidence. Accordingly, we overrule points of error three, four,
and seven.CHARGE ON THE LAW OF PARTIES

 In point of error five, appellant contends the trial court erred in including an
instruction on the law of parties in the charge because it was not raised by the
evidence. Even where a proper objection is made at trial, the Court of Criminal
Appeals has held that when, as in the instant case, the evidence supports a
defendant's guilt as the primary actor, error, if any, in charging on the law of parties
is harmless. See Cathey v. State, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999).

 We previously set out the evidence that established appellant's guilt as a
primary actor. He was seen in the parking lot with a gun near the area where
Bojorquez was found shot. Shots were fired from multiple guns, and appellant was
one of two men seen in the parking lot with a gun. He knew Wooley, and both he and
Wooley chased after Payan. Appellant and Wooley then fled in a car registered to
appellant. Beltran identified appellant as the man in the blue shirt holding a long gun. 

 Even if we assume the trial court erred in submitting the parties charge,
appellant has failed to show harm. See Cathey, 992 S.W.2d at 466. Accordingly, we
overrule point of error five. 

EXCLUSION OF EVIDENCE


 In point of error eight, appellant contends the trial court erred by excluding
evidence that the shell casings recovered at the scene of the murder matched the shell
casings recovered at another location.

 To preserve error in the exclusion of evidence, a party must make a sufficient
offer of proof and obtain a ruling. Tex. R. Evid. 103(a)(2); Tex. R. App. P.
33.1(a)(1)(A); Hernandez v. State, 127 S.W.3d 206, 216 (Tex. App.--Houston [1st
Dist.] 2003, pet. ref'd). Error may not be predicated upon a ruling that excludes
evidence unless a substantial right of a party is affected and the substance of the
evidence was made known to the court by offer of proof or was apparent from the
context within which questions were asked. Tex.R. Evid. 103(a)(2); Warner v. State,
969 S.W.2d 1, 2 (Tex. Crim. App. 1998); Hernandez, 127 S.W .3d at 216; Garza v.
State, 846 S.W.2d 936, 939 (Tex. App.--Houston [1st Dist] 1993, pet. ref'd). An
offer of proof must show that the excluded evidence is relevant and admissible and
must show the facts that a defendant wishes to prove. Edwards v. State, 178 S.W.3d
139, 146 (Tex. App.--Houston [1st Dist] 2005, no pet.); Railsback v. State, 95
S.W.3d 473, 478 (Tex. App.--Houston [1st Dist] 2002, pet. ref'd). An offer of proof
must be specific enough to enable the reviewing court to determine the admissibility
of the disputed evidence; only a short, factual recitation of what the testimony would
show is required. In re N.R.C., 94 S.W.3d 799, 806 (Tex. App.--Houston [14th Dist]
2002, pet denied).

 On appeal, appellant argues that the excluded evidence would have shown that
Ron Strandberg was involved in another shooting using the same.40 caliber gun that
was involved in the present shooting, and that appellant was not present or
investigated in connection with the other shooting. However, appellant's trial
counsel did not make an offer of proof or present a bill of exception to the trial court
to reveal this anticipated substance of the excluded testimony. See Tex.R. Evid.
103(a)(2); Guidry v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). Appellant did
not make the substance of King's or Downs's testimony known to the court by offer
of proof, and the substance of that testimony was not apparent from the context. See
Guidry, 9 S.W.3d at 153; Warner, 969 S.W.2d at 2; Hernandez, 127 S.W.3d at 216;
Garza, 846 S.W.2d at 939.

 Because no offer of proof was made, and the record does not indicate what the
excluded testimony would have been, appellant has waived any error, and nothing is
presented for review. See Tex.R. Evid. 103(a)(2); Guidry, 9 S.W.3d at 153.





 We overrule appellant's eighth point of error.

CONCLUSION

 We affirm the judgment.





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Do not publish. Tex. R. App. P. 47.2(b).