**Affirmed and Memorandum Opinion filed January 6, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-20-00363-CR

---

**EDMUNDO CISNEROZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 147th District Court
Travis County, Texas
Trial Court Cause No. D-1-DC-18-203683**

---

### MEMORANDUM OPINION

Appellant Edmundo Cisneroz pleaded guilty to first-degree murder without a plea agreement, and the jury assessed punishment at 30-years imprisonment in 2020. Tex. Penal Code Ann. §§ 19.02(b) (murder); 12.32 (first-degree felony punishment). In his sole issue on appeal, appellant challenges his sentence, arguing the evidence is legally and factually insufficient to support the jury's negative

finding on the issue of whether appellant acted in sudden passion. We affirm.[1]

# I. BACKGROUND

Appellant and his girlfriend, Rosa Hernandez, lived together, along with five of Rosa's children and the boyfriend of Rosa's adult daughter. One morning in May 2018, Rosa's daughter, Terri, found her mother in a strange position in bed, not breathing. Appellant was not at the house and had left in Terri's vehicle. Terri called for an ambulance and discovered foam in her mother's throat and mouth. Rosa's death was determined to have been caused by manual strangulation.

At trial in January 2020, appellant pleaded guilty to the charge of murder and testified about his interactions with Rosa leading up to her death. Several days before the murder, appellant discovered text messages between Rosa and another man. Though he testified he cried and asked Rosa to block the number, appellant remained suspicious.

On the evening of the murder, Rosa went to her mother's home along with several of her young children. Though Rosa told appellant that she was spending time with her mother and siblings, text messages introduced in evidence reflect that appellant was suspicious regarding the length of her visit. Appellant and Rosa exchanged text messages consistently throughout the evening, with Rosa repeatedly using insulting language and asking appellant to leave her alone. While Rosa was gone, appellant was drinking beers alone. He testified that he drank more than 20 beers, without eating, waiting for Rosa to come home. Text messages, as

---

[1] The Supreme Court of Texas ordered the Court of Appeals for the Third District of Texas to transfer this appeal (No. 03-20-00257-CR) to this court. Misc. Docket No. 20-9048 (Tex. March 31, 2020); *see* Tex. Gov't Code Ann. §§ 73.001, .002. Because of the transfer, we decide the case in accordance with the precedent of the transferor court under principles of stare decisis if our decision otherwise would have been inconsistent with the transferor court's precedent. *See* Tex. R. App. 41.3.

well as Rosa's autopsy, reflect that Rosa had also been drinking that evening.

When she arrived home, appellant testified that Rosa changed into her sleeping clothes. She then sat outside with appellant and drank beer with him. At trial, appellant testified that he remembered fighting with Rosa. He remembered little of the night after Rosa returned home but did recall that once inside the house Rosa became increasingly angry and hit him in the stomach. Rosa then told him that she had been unfaithful to him and he recalled grabbing her neck. He did not remember any of the details thereafter and described himself as "unconscious." There were no witnesses to the altercation between appellant and Rosa, and the argument between the two did not wake any of Rosa's children sleeping nearby.

Appellant testified that he left the house immediately after the incident. He testified that he "came to" driving sometime later. Appellant drove to a nearby club where he met some other young men, continued to drink, and took lines of cocaine. Police located appellant by tracing Terri's vehicle which had a vehicle location system installed.

Following his guilty plea, appellant had a trial on his punishment. The jury received an instruction on sudden passion but returned a negative finding and assessed punishment at 30-years imprisonment.

## II.  ANALYSIS

In his sole issue on appeal, appellant argues that the jury's negative finding on the issue of sudden passion is not supported by legally- or factually-sufficient evidence.

## A.  Applicable law

During the punishment phase of a murder trial, a defendant may argue that he caused the death while under the immediate influence of a sudden passion

arising from an adequate cause. Tex. Penal Code Ann. § 19.02(d). "If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id*. A felony of the second degree is punishable by imprisonment from two to twenty years. *See* Tex. Penal Code Ann. § 12.33(a). In contrast, when the jury rejected appellant's sudden-passion defense, it was instructed that the offense of murder, as a felony of the first degree, is otherwise punishable by imprisonment from five years to life. *See* Tex. Penal Code Ann. §§ 12.32(a), 19.02(c).

"Sudden passion" is defined by statute as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex. Penal Code Ann. § 19.02(a)(2). The "adequate cause" giving rise to sudden passion for these purposes is a cause "that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1); *see also Beltran v. State*, 472 S.W.3d 283, 294 (Tex. Crim. App. 2015) (requiring causal connection between complainant's provocation, defendant's passion, and homicide).

## B.     Legal Sufficiency

### 1.     Standard of review

In *Brooks v. State*, the court of criminal appeals held that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence can support each element of a criminal offense that the State must prove beyond a reasonable doubt. 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). However, for a challenge to the legal sufficiency of the evidence when the issue is one in

which the defendant had the burden of proof by a preponderance of the evidence, like sudden passion, we utilize the legal-sufficiency standard employed in civil cases. *Matlock v. State*, 392 S.W.3d 662, 669 (Tex. Crim. App. 2013) (adopting civil legal-sufficiency test from *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005)). The civil legal-sufficiency standard requires a two-step analysis. *Id.* at 669–70. First, we examine the record for evidence that supports the jury's negative finding while disregarding all evidence to the contrary unless a reasonable fact finder could not. *See Matlock*, 392 S.W.3d at 669. Second, if no evidence supports the negative finding, then we examine the entire record to determine whether the evidence establishes the affirmative defense as a matter of law. *Id.* at 669–70. "If the record reveals evidence supporting the defendant's position . . . but that evidence was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, we will not consider that evidence in our matter-of-law assessment." *Id.* at 670.

### 2. Legally-sufficient evidence supports the jury's finding

Appellant argues there is "no evidence that the Appellant did not act in response to his alcohol, the provocation of the victim, and the devastating revelation that she had slept with someone else." Here, the critical piece of appellant's argument is that appellant claimed he learned for the first time that Rosa was cheating on him with another man just before he strangled her. He also argues that the amount of alcohol he consumed contributed to his lack of capacity for rational thought and collected action.

The State argues in response that precedent "suggests" that Rosa's admission of infidelity, alone, would not constitute adequate cause "in a person of ordinary temper, to render the mind incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1). While the mere fact that a defendant acts in response to the

5

provocation of another is not sufficient to support a finding of sudden passion, the State has not identified any precedent in which there was a holding that an admission of infidelity is insufficient as a matter of law to constitute adequate cause for sudden passion. *See Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003) (per curiam) (merely responding to provocation not sufficient to establish adequate cause). The State also relies on a Third Court of Appeals case in which the defendant killed his estranged wife after ongoing arguments about her infidelity during his deployments. *See Swearingen v. State*, 270 S.W.3d 804, 820 (Tex. App.—Austin 2008, pet. ref'd). However, in *Swearingen*, the court's holding was driven by its conclusion that the defendant's actions did not reflect a loss of control or capacity for rational thought, not the specific topic of the defendant's provocation. *Id*. We disagree with the State that precedent exists supporting the proposition that an admission of a romantic partner that they had been with another can never cause a person of ordinary temper to react in a sudden passion.

Though appellant claims that his testimony about learning of Rosa's infidelity was uncontradicted, the record does not support this assertion. Appellant's statements to police the day after the murder support the jury's negative finding. Because appellant's prior statements do not reflect any revelation of infidelity on the night of the murder, they do not establish adequate cause for appellant's claim of sudden passion.[2] *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) (holding victim pushing and yelling at defendant just

---

[2] The State also argues on appeal that appellant's claim of sudden passion in response to Rosa's alleged revelation of infidelity on the night of the murder could not constitute adequate cause because appellant knew of the victim's infidelity several days before the murder. The State argues that appellant's knowledge of communications between Rosa and her ex-boyfriend provided appellant with knowledge that Rosa was "cheating" or engaging in a physical relationship with another man. Though appellant admitted that he learned Rosa was texting with another man two days before the murder, we disagree with the State that appellant's knowledge of text messages between Rosa and another man can be equated to knowledge of a physical relationship between Rosa and another man.

before defendant shot victim was not adequate cause to give rise to immediate influence of sudden passion); *Gaston v. State*, 930 S.W.2d 222, 226 (Tex. App.— Austin 1996, no pet.) (stating "taunting" and "nagging" and threats of divorce may be "unpleasant" but do not equate to adequate cause).

Appellant's statements to police describe an argument between Rosa and appellant that began with appellant receiving insults from Rosa over his attempts to control Rosa's drinking and behavior over text message and ultimately escalated into a physical altercation at the end of the night. Appellant described Rosa returning home from her mother's house very angry. He told police that she wanted to fight with him and hit him. In order to calm her down, appellant recounted that he grabbed Rosa by the neck for a minute and that she fainted from her anger. During his interview with police, appellant specifically discussed the fact that he found text messages between Rosa and her ex-boyfriend on her phone. He told the police that he thought she was only texting with her ex-boyfriend, and not engaging in a relationship with that person. On cross-examination at trial, appellant could not explain why he did not tell police about Rosa's alleged admission of infidelity. Appellant's pre-trial description of the evening constitutes mere provocation on Rosa's part and lacks support for an adequate cause justifying sudden passion. *Trevino*, 100 S.W.3d at 241.

The jury also heard testimony from the medical examiner that appellant had to apply pressure to Rosa's neck for approximately two to five minutes in order to cause her death. A rational jury could have concluded that appellant's actions in applying pressure to Rosa's neck for that length of time continued long after any "sudden passion" would have subsided in a person of ordinary temper, and therefore appellant did not cause the complainant's death while under the "immediate" influence of any sudden passion. *See, e.g., Johnson v. State*, 815

7

S.W.2d 707, 712 (Tex. Crim. App. 1991) (even if jury believed wife's taunts were sufficient to provoke appellant initially, rational factfinder could determine that appellant continued to inflict injuries leading to his wife's death long after "sudden passion" would have subsided in person of ordinary temper).

In examining the record under the first prong of the civil legal-sufficiency standard, we conclude that some evidence supports the jury's negative finding on sudden passion. Therefore, we need not address the second prong of the civil legal-sufficiency standard. *See Matlock*, 392 S.W.3d at 670.

## C.     Factual Sufficiency

### 1.     Standard of review

For appellant's factual sufficiency challenge, we apply the standard announced in *Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990), to review an issue on which the defendant had the burden of proof by a preponderance of the evidence. *Matlock v. State*, 392 S.W.3d 662, 670–71 (Tex. Crim. App. 2013); *see also Cleveland v. State*, 177 S.W.3d 374, 387, 390–91 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (applying *Meraz* standard to review factual sufficiency of jury's negative sudden passion finding and cited with approval in *Matlock*, 392 S.W.3d at 671 n.32). Under *Meraz*, we consider all the evidence neutrally to determine if the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Matlock*, 392 S.W.3d at 671; *Meraz*, 785 S.W.2d at 154–55. We may not, however, intrude on the factfinder's role as the sole judge of the weight and credibility of the witnesses' testimony. *See Matlock*, 392 S.W.3d at 671.

### 2.     Factually-sufficient evidence supports the jury's finding

Appellant argues that the jury's negative finding was against the greater

weight of the evidence presented because it would be against the "uncontradicted testimony of Appellant." In response, the State argues that considering the inconsistencies in appellant's testimony, the jury's finding was *not* against the great weight and preponderance of the evidence. We agree.

The evidence contrary to the jury's negative finding on sudden passion consists solely of appellant's testimony that he was very drunk and reacted in sudden passion to Rosa's admission of infidelity. As discussed above, appellant's testimony at trial differed significantly from his account of the evening given to police the day after the murder. Appellant's testimony at trial did not greatly outweigh his other statements regarding his interactions with Rosa, because the jury was entitled to determine the weight and credibility of appellant's various accounts.

The jury was presented with inconsistences in appellant's description of the night at trial and before trial. As discussed above, appellant testified that he was provoked into a sudden passion after Rosa revealed she had been unfaithful. This was inconsistent with his statements before trial in which he never mentioned Rosa's revelation of infidelity. Additionally, at trial appellant testified he was extremely drunk though he told police the day after the murder that he was sober. The jury heard in pre-trial statements that he put his arms on Rosa's neck to calm her, and she fainted from anger. This description differs from appellant's testimony at trial, in which he admits to putting his arms on Rosa's neck but does not recall strangling her. Finally, the jury heard evidence that Terri called the police several months before Rosa's death because of a violent dispute between appellant and Rosa—a dispute in which appellant put his hands on Rosa's neck and tried to choke her.

The jury was free to disbelieve the appellant's testimony as a matter of

9

witness credibility or because he changed his story. *See Trevino v. State*, 157 S.W.3d 818, 822 (Tex. App.—Fort Worth 2005, no pet.) ("The jury was free to make its own determination of appellant's credibility and reject appellant's version of events if it did not believe he was telling the truth"); *Hernandez v. State*, 127 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("the jury could have disbelieved appellant's testimony that Cruz incited him to more than ordinary anger" when decedent allegedly argued with defendant, challenged his masculinity, and threatened to leave him for another man). Given that all the evidence of sudden passion depends on appellant's credibility, we defer to the jury's determinations about the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). To hold otherwise is to substitute our judgment for that of the jury.

Concluding the jury's rejection of sudden passion is not so against the great weight and preponderance of the evidence as to be manifestly unjust or clearly wrong, we overrule appellant's sole issue on appeal.

## III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/　　Charles A. Spain
　　　　Justice


Panel consists of Justices Jewell, Spain, and Wilson.

Do Not Publish—Tex. R. App. P. 47.2(b).