Timothy Johnson v









NO. 12-08-00061-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

BILL
CRAMER,                                                   §               APPEAL
FROM THE 217TH 

APPELLANT

 

V.                                                             
            §                JUDICIAL DISTRICT COURT

 

THE STATE OF TEXAS,                                 

APPELLEE                                                        §                 ANGELINA  COUNTY, TEXAS







MEMORANDUM
OPINION

            Bill
Cramer appeals from his convictions for three counts of indecency with a child,
two counts of aggravated sexual assault, and four counts of sexual assault.  In
four issues, Appellant argues that the evidence is insufficient to support the
verdicts, that the trial court erred in allowing a police officer to testify
about a child’s statements to him, and that the trial court erred by sustaining
the State’s objection to the admission of certain physical evidence.  We
affirm.

 

Background

            On
June 21, 2006, eighteen year old S.S.’s ex–boyfriend came to her house and
delivered an envelope to S.S.’s mother, Sherry.  S.S. tried to take the
envelope from Sherry, but she was unable to do so.  Sherry reviewed the
contents of the envelope and learned that S.S. had had a sexual relationship
with her ex–boyfriend.  S.S. confirmed the relationship but told her mother it
was not the first time she had had sexual intercourse.  After further
conversation, she told her mother that Appellant, her stepfather, had sexually
assaulted her when she was a sophomore in high school.  

            Six
days later, after being encouraged to do so by an Army recruiter who was
helping her join the service, S.S. reported the assault to the police.  After
that, S.S.’s father contacted Appellant’s ex–wife, Cecelia, and told her about
the allegations.  This gave rise to a painful realization for Cecelia as she
recalled that the daughter she had with Appellant, C.C., had not wanted to
visit him and that she had returned from one visit with Appellant with her
genital and anal areas reddened and “raw.”  At the time, C.C. said that
Appellant had caused the injuries inadvertently with a washcloth while bathing
her, and Cecelia had not suspected abuse.  After hearing from S.S.’s father, Cecelia
asked C.C., then a teenager, if Appellant had assaulted her.  C.C. did not say
that she had been assaulted, but Cecelia had her examined and filed a report
with the police.

            In
December 2006, an Angelina County grand jury indicted Appellant, alleging that
he had committed three counts of indecency with a child (with C.C. and S.S. as
the victims), two counts of aggravated sexual assault (with C.C. as the victim),
and four counts of sexual assault (with S.S. as the victim).  In September
2007, the State moved to amend the indictment, altering only the alleged dates
and manner in which it alleged that Appellant committed the aggravated sexual
assaults.  

            A
trial was held in 2008.  Appellant pleaded not guilty.  The jury found him
guilty as charged and assessed punishment at five years for each of the
indecency counts, twenty–five years for each of the aggravated sexual assault
counts, and ten years for each of the sexual assault counts.  The trial court
ordered that the sentences be served concurrently.  This appeal followed.

 

Sufficiency of the Evidence

            In
his first two issues, Appellant argues that the evidence is legally and
factually insufficient to support the verdicts.  

Standard
of Review

            The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence.  See Jackson v. Virginia,
443 U.S. 307, 315B16,
99 S. Ct. 2781, 2786B87,
61 L. Ed. 2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.
Crim. App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex. App.BTyler 2006, pet. ref=d).  Evidence is not
legally sufficient if, when viewing the evidence in a light most favorable to
the verdict, no rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see also Rollerson v. State, 227 S.W.3d 718,
724 (Tex. Crim. App. 2007).

While
legal sufficiency review is all that is required by the U.S. Constitution, the
Texas Court of Criminal Appeals has determined that the Texas Constitution
requires further review of the factual sufficiency of the evidence.  Clewis
v. State, 922 S.W.2d 126, 129B30
(Tex. Crim. App. 1996).  Factual sufficiency review differs from legal
sufficiency review only slightly.  See Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006).  In a factual sufficiency review,
we review the evidence without the light most favorable to the verdict and we
are authorized, “albeit to a very limited degree,” to disagree with the jury’s
resolution of contested factual issues.  See id.; Watson v.
State, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006).  In a review of
the factual sufficiency of the evidence, we will conclude that the evidence is
insufficient only if the great weight and preponderance of the evidence
contradicts the jury=s
verdict or the verdict is clearly wrong and manifestly unjust.  See Rollerson,
227 S.W.3d at 724; Watson, 204 S.W.3d at 417. 

Under
either standard, our role is that of appellate review, and the fact finder is
the principal judge of the weight and credibility of a witness=s testimony.  Wesbrook
v. State, 29 S.W.3d 103, 111B12
(Tex. Crim. App. 2000).  The fact finder may choose to believe all, some, or
none of a witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986).

As
alleged in the indictment, the State was required to prove that Appellant engaged
in sexual contact with a child younger than seventeen years of age and not his
spouse (indecency with a child, Tex. Penal
Code Ann. §§ 21.11(a), (b–1)
(Vernon Supp. 2009));[1]
that Appellant intentionally or knowingly caused the penetration of the anus or
sexual organ of another person under the age of seventeen and not his spouse
(sexual assault, Tex. Penal Code Ann. §§ 22.011(a)(2)(A),
(c)(1), (e)(1) (Vernon Supp. 2009)); and that Appellant intentionally or
knowingly caused the penetration of the anus or sexual organ of a person
younger than fourteen years of age (aggravated sexual assault, Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2009)).  

Analysis

Appellant
argues that there is no physical evidence that S.S. was assaulted and that her
testimony is internally inconsistent and unbelievable.  He also argues that
there is no conclusive physical evidence that C.C. was assaulted, that she only
said that she had been assaulted after the indictment was returned, and that a
witness’s testimony about her outcry should not have been admitted and should
be afforded little weight.

We
begin with the observation that the uncorroborated testimony of a child witness
is sufficient to support a conviction for sexual assault or for aggravated
sexual assault.  See Tex. Code
Crim. Proc. Ann. art. 38.07(a), (b)(1) (Vernon 2005); Satterwhite
v. State, 499 S.W.2d 314, 315 (Tex. Crim. App. 1973); Jensen v.
State, 66 S.W.3d 528, 534 (Tex. App.BHouston
[14th Dist.] 2002, pet. ref=d).
 Both of the young women in this case testified about the assaults and acts of
indecency with a child that Appellant committed against them.  

The
assaults and acts Appellant committed against S.S. were against her will.  But
over time, the assaults became less like an attack by a stranger and more like
a sexual relationship.  For example, S.S. testified that Appellant would
stimulate her with his hand and insist that she have an orgasm before he would
stop.  And while she sought to avoid having sexual relations with Appellant, S.S.
did initiate sexual contact with Appellant to avoid having to perform other
acts or in an effort to shield another child.

Her
testimony about the nature of their relationship was corroborated by several witnesses
who knew both of them.  S.S.’s aunt testified that she was dropping her
daughter off at school one day when she was stuck behind a pickup truck in
which the occupants were “intimately kissing.”  She had to leave because she
had to drop another daughter off at another school and was concerned that she would
be late.  It was then that S.S. slid out of the passenger side of the truck.  Appellant
was the other occupant of the truck.  Additionally, one of Appellant’s coworkers
testified about times when he observed S.S. sitting on Appellant’s lap in a
pose he thought was inappropriate and recalled a wrestling incident between
Appellant and S.S. during which he thought the two were overly affectionate.  The
friend’s wife, who was present for the wrestling incident, described it as “quite
flirtatious” and almost like “courting” or “foreplay.”  She also testified that
the next morning, S.S. brought Appellant his breakfast and she sat in his lap
with her legs over the side of the chair.  She thought it appeared
inappropriate and more like “couple behavior” than “father/daughter” behavior. 


Further,
a former boyfriend of S.S. testified that Appellant wanted to meet him before
he took S.S. to the prom and that Appellant’s attitude towards him seemed more
like that of a romantic rival than a concerned father.  The boyfriend provided
the prosecution with photographs of Appellant and S.S. on prom night.  The
pictures were introduced into evidence and show S.S. in her dress and Appellant
standing behind her with his hands low on her hips.  The former boyfriend
thought the placement of Appellant’s hands was overly affectionate.  Finally,
in terms of corroboration generally, S.S. was able to describe the physical
attributes of Appellant’s groin area.  There was nothing remarkable about her
description, but C.C.’s mother, Appellant’s ex–wife, gave a similar
description.   

With
respect to C.C., there was medical evidence that supported her testimony that
Appellant penetrated her anus.  Specifically, she bled from this area of her
body as a small child.  She was evaluated by several doctors at the time, and
no satisfactory diagnoses were rendered.  At one examination she had a skin tag
on her rectum.  A second skin tag was detected when she was evaluated by a
nurse after S.S.’s report of the assault.  There was testimony that skin tags
could be the result of injury to the rectum that could come from a sexual
assault.  The nurse also observed that the dilation of C.C.’s anus and her sphincter
response were abnormal.  She testified that these responses were consistent
with sexual assault.  There was conflicting testimony as to whether the bleeding
stopped after C.C. stopped visiting Appellant.  She and her mother testified
that it did, although she continued to seek treatment.

There
was also evidence contrary to the verdict.  Appellant testified that he did not
assault or touch the girls.  Additionally, S.S.’s mother did not believe S.S.’s
allegations and she, along with other witnesses, testified about the logistical
difficulty of such acts having occurred.  For example, the house where most of
the assaults on S.S. allegedly occurred was relatively small and witnesses,
including S.S., testified that one could easily hear what was going on in other
parts of the house.  Furthermore, some of the described assaults occurred in unlikely
circumstances, including when S.S.’s mother was in the shower or in the next
room cooking dinner.  Finally, none of the medical professionals who examined
C.C. around the time she said she was assaulted had diagnosed her with having
been sexually assaulted or made reports to the authorities after examining her.[2]

With
respect to the outcry witness, Appellant argues in the third issue that this
testimony should not have been admitted.  We address the admissibility of the
outcry statement in the next section of our opinion.  In terms of the
sufficiency of the evidence, we think the outcry had little effect on the
verdict.  The outcry in this case was unusual because C.C. told a Texas Ranger
that Appellant committed acts for which Appellant had already been indicted.  However,
Appellant’s argument that C.C.’s testimony was a false memory or part of an
attempt to frame him was not damaged by the unusual outcry so close to trial. 
If the memory was false or part of a conspiracy, that process was well along by
the time the outcry occurred, and we think it unlikely that the jury considered
the outcry statement to be different from or somehow corroborative of C.C.’s
testimony at trial.

After
reviewing all of the evidence, we conclude that a rational jury could find the
essential elements of the offenses beyond a reasonable doubt and that the evidence
is legally sufficient to support the verdict.  Both young women testified about
the assaults.  Their testimony, if believed, proved each of the essential
elements of the charged offenses.  There is substantial corroborative evidence,
and while not uncontroverted, a rational jury could credit the testimony of
C.C. and S.S.  

With
respect to the factual sufficiency of the evidence, we hold that the great
weight and preponderance of the evidence does not contradict the jury’s verdict
and that the verdict is not clearly wrong and manifestly unjust.  The resolution
of this case turned almost entirely on an evaluation of the credibility of witnesses
and the weight to be afforded to each witness’s testimony.  The jury is in the
best position to make that determination, and we hold that the evidence is
factually sufficient.

We
overrule Appellant’s first and second issues.

 

Outcry Testimony

In
his third issue, Appellant argues that the trial court erred by allowing the
testimony of Texas Ranger Peter Maskunas as to C.C.’s oral statement to him
about Appellant’s actions.

Applicable
Law

Hearsay
statements, while generally inadmissible, may be admitted under specific
conditions when public policy supports their use, and the circumstances
surrounding the making of those statements support their reliability.  See
 Martinez v. State, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005).  The legislature has determined that one such situation is the
outcry, or self­reporting, statement of a child victim of sexual or physical
abuse.  Id. at 810–11; see Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2009).  

However,
the use of such out of court statements is carefully limited.  Only those
statements made to a person eighteen years of age or older qualify, and then
only if the child was twelve or younger when the abuse occurred.  See Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1, 2(a)(2).  The state must
provide adequate pretrial notice to the defendant of its intent to introduce
the child outcry statement, and it must provide the name of the outcry witness
and a summary of the hearsay statement.  Id. § 2(b)(1).  Furthermore,
the trial court must first determine, outside the presence of the jury, that
the statement is reliable “based on the time, content, and circumstances of the
statement,” and the child must testify at trial or be available to testify.  Id . §§ 2(b)(2), 2(b)(3). 

Generally,
we review a trial court’s ruling on the admission of evidence for an abuse of
discretion.  See Casey v. State, 215 S.W.3d 870, 879 (Tex.
Crim. App. 2007); Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1991) (op. on reh’g).  Specifically, a trial court’s determination that
an outcry statement is admissible under article 38.072 is reviewed for an abuse
of discretion.  See Nino v. State, 223 S.W.3d 749, 752
(Tex. App.–Houston [14th Dist.] 2007, no pet.); see also Garcia v. State,
792 S.W.2d 88, 91–92 (Tex. Crim. App. 1990). 

 

 

Analysis

Appellant
makes two arguments.  First, he argues that Ranger Maskunas was not a proper
outcry witness because Appellant had already been indicted for the offenses at
the time she made the outcry to Maskunas.  Second, Appellant argues that the
outcry is “unreliable as a matter of law.”

With
respect to his first argument, we agree with Appellant that the sequence of
events in this case is unusual.  Many criminal investigations begin with the
victim’s making a report of a crime.  An investigation follows, an indictment
is returned or an information filed, and then the case proceeds to trial.  In
this case, there was an investigation that included an outcry from C.C. to her
mother for the offenses of indecency with a child.  C.C. never told anyone that
Appellant had penetrated her anus, but the grand jury indicted him for two
counts of aggravated sexual assault, alleging that he penetrated her anus with
his finger and with his sexual organ.  Then, after the indictment but prior to
trial, C.C. disclosed to Maskunas that Appellant had penetrated her anus with
his sexual organ.  The State amended the indictment to allege in both counts
that Appellant had penetrated her anus with his sexual organ and amended the
dates on which the alleged offenses occurred.  

Several
lengthy conversations occurred between the trial court, the district attorney,
and Appellant’s counsel on this matter.  Appellant argued that it was a “reasonable
assumption that [C.C.] made these [outcry] statements to someone else as to these
specific allegations.”  Accordingly, he argued that Maskunas could not have
been the first person to whom C.C. disclosed these occurrences.  The district
attorney, without stating that this was the case, postulated that the grand
jury returned its indictment based on the medical information about C.C., the
rectal bleeding that she suffered, and the information about the assaults on
S.S.

The
district attorney represented that there was no other person to whom C.C. had
confided about the aggravated sexual assaults, and the evidence at trial bore
that out.  C.C. and her mother testified that C.C. did not talk about the
assaults, and no other witness was revealed whom C.C. had told about the
aggravated sexual assaults.  Accordingly, we hold that the trial court did not
abuse its discretion by allowing the outcry testimony simply because it came
after the indictment had been returned.  Article 38.072 contains several
specific procedural and substantive requirements including that the witness be
the first person to whom the child first made a statement about the offense.  Maskunas
was that witness according to the evidence at trial.

With
respect to Appellant’s argument that Maskunas’s testimony was unreliable as a
matter of law, he argues specifically that it was very convenient for the State
that an outcry witness appeared in the months before trial, that the
description was overly precise, and that the “recognized guidelines for
forensic interviews” were not followed.  

Our
analysis of whether the outcry statement was reliable in “time, content, and
circumstances” is based on “the time the child’s statement was made to the
outcry witness, the content of the child’s statement, and the circumstances
surrounding the making of that statement.” See Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2); Broderick v. State, 89
S.W.3d 696, 699 (Tex. App.–Houston [1st Dist.] 2002, pet. ref’d).  Factors a
trial court may consider in assessing the reliability of a child’s statement
include

 

(1)    
whether the child victim testifies
at trial and admits making the out of court statement;

 

(2)    
whether the child understands the
need to tell the truth and has the ability to observe, recollect, and narrate;

 

(3)     whether other evidence corroborates
the statement;

(4)    
whether the child made the
statement spontaneously in her own terminology or whether evidence exists of
prior prompting or manipulation by adults;

 

(5)    
whether the child’s statement is
clear and unambiguous and rises to the needed level of certainty;

 

(6)     whether the statement is consistent
with other evidence;

(7)    
whether the statement describes an
event that a child of the victim’s age could not be expected to fabricate;

 

(8)     whether the child behaves abnormally
after the contact;

(9)     whether the child has a motive to
fabricate the statement;

(10) whether the child expects punishment because of
reporting the conduct; and

(11) whether the accused had the opportunity to commit the
offense.

 

Norris v.
State, 788 S.W.2d 65, 71 (Tex. App.–Dallas 1990, pet. ref’d) (citing Buckley
v. State, 758 S.W.2d 339, 343–44 (Tex. App.–Texarkana 1988), aff’d,
786 S.W.2d 357 (Tex. Crim. App. 1990)).  These factors are not exclusive, and “courts
have considerable leeway in their consideration of appropriate factors.”  Smith
v. State, 61 S.W.3d 409, 412–13 (Tex. Crim. App. 2001).

Applying
these factors, we hold that the trial court did not err.  Several factors weigh
in favor of admissibility.  The child testified at trial that she made the
statement, and she appeared to understand the need to tell the truth.  She had
the ability to observe and narrate, and other evidence–specifically the medical
evidence and her seemingly irrational fear of her father–corroborated her story. 
The child’s statement, while brief, is clear and unambiguous, and it is
consistent with the other evidence.  The child behaved abnormally after the contact,
and the accused had the opportunity to commit the offense.

On
the other hand, several factors weigh against admissibility.  With respect to
the fourth factor, reasonable minds could differ as to the spontaneity of the
statement and the amount of prompting that preceded it.  It was plain, at least
to the district attorney, that he could not proceed on the counts relating to
the sexual assault of C.C. without her testimony that they occurred.  Furthermore,
Maskunas’s testimony as to the questioning he used, along with the lack of
recording of the session, leads to an incomplete picture.  Maskunas testified
that when conducting an interview such as this one, he allowed the child to
take the interview in the direction “she wanted to go.”  However, he also
testified that his purpose in his interview with C.C. was to get to know her and
also to determine “what information she was willing to talk about.”  When asked
if he asked leading questions, Maskunas said, “Not to my knowledge.”  So, with
respect to this factor, there is not evidence that Maskunas suggested anything
to the victim, but neither is there the kind of certainty on this issue that
there would be with a recording of the interview.

Furthermore,
though not presented before the trial court made its ruling, Maskunas testified
that when he asked C.C. what she meant by anal intercourse, “she described it
as an act of a man placing his penis in the rectum of a female for sexual
pleasure.”  Although he described it as a “quotation,” it is not clear if these
were the exact words C.C. used or his own paraphrase.  If it is a direct
quotation, it would be an unusual way for a young teenager to describe that
act.  Indeed, in her own testimony, C.C. described the act as Appellant putting
his “private part” in her “bottom.”

It
cannot be said that the child could not have fabricated the act she described. 
And while there is no evidence that the child had a motive to fabricate, there
was evidence of considerable tension between her parents.  The child had been
threatened with consequences if she told of the event.  But it is not clear if
this makes the actual outcry more or less reliable, as she had other
opportunities to self–report, including counseling sessions in which she would
have been able to disclose this abuse.  

Appellant’s
argument addresses most directly the fourth factor, that is whether the
statement was prompted or manipulated by Maskunas.  Maskunas had a plausible
explanation for why the statement was not recorded.  He testified that he did
not expect C.C. to divulge this information to him.  Appellant argues that this
is not the case, and that Maskunas’s notes show that he was there to “discuss
the history of abuse by [C.C.’s] father, [Appellant.]”  This observation is slightly
off the mark to the extent that C.C. had already disclosed incidents that supported
the charged offense of indecency with a child.  But, when coupled with Maskunas’s
answer about leading questions, and the fact that Appellant had been indicted
for the aggravated sexual assault and the State needed her testimony, this
factor weighs against the reliability of the statement.

On
the other hand, there is no evidence that Maskunas prompted or manipulated the
statement, and most of the other indicia of reliability weigh in favor of
admitting the outcry statement.  Accordingly, we hold that the trial court did
not abuse its discretion by allowing C.C.’s statement to Maskunas to be
admitted.  We overrule Appellant’s third issue.

 

Admission of
Evidence

In
his fourth issue, Appellant argues that the trial court erred when it did not
allow into evidence the contents of the envelope delivered by S.S.’s ex–boyfriend
to her mother, the envelope that prompted the investigation that led to this
case being brought.  

The
State objected to the evidence on the grounds that the evidence was either
hearsay or irrelevant, that it violated the right to confront witnesses, and
that the prejudicial value of the evidence outweighed any probative value.  The
trial court sustained the State’s objection, and the disputed evidence was not
admitted at trial.  Appellant did not make an offer of proof of the evidence he
had sought to admit.  

To
preserve error in the exclusion of evidence, a party must make a sufficient
offer of proof and obtain a ruling.  Tex.
R. Evid. 103(a)(2); Tex. R. App.
P. 33.1(a)(1)(A); Hernandez v. State, 127 S.W.3d 206, 216 (Tex.
App.–Houston [1st Dist.] 2003, pet. ref’d).  Error may not
be predicated upon a ruling that excludes evidence unless a substantial right
of a party is affected and the substance of the evidence was made known to the
court by offer of proof or was apparent from the context within which the questions
were asked.  Tex. R. Evid.
103(a)(2); Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998);
Hernandez, 127 S.W.3d at 216.  An offer of proof must show that
the excluded evidence is relevant and admissible and must show the facts that a
defendant wishes to prove.  See Edwards v. State, 178
S.W.3d 139, 146 (Tex. App.–Houston [1st Dist.] 2005, no pet.); Railsback
v. State, 95 S.W.3d 473, 478 (Tex. App.–Houston [1st Dist.] 2002, pet.
ref’d).  An offer of proof must be specific enough to
enable the reviewing court to determine the admissibility of the disputed
evidence, though only a short factual recitation of what the testimony would
show may suffice.  See In re N.R.C., 94 S.W.3d 799, 806
(Tex. App.–Houston [14th Dist.] 2002, pet. denied). 

In
this case, there is literally nothing for us to review.  Neither the Appellant’s
discussion of the evidence or the State’s brief description[3]
of it are sufficient for us to form more than a vague surmise of what this
evidence might be.  Accordingly, Appellant has not preserved this issue for our
review, and we overrule Appellant’s fourth issue.[4]

 

Disposition

Having
overruled Appellant’s four issues, we affirm the judgment of the
trial court.

 

                                                                                                Sam Griffith

                                                                                                         
Justice

 

 

 

 

Opinion delivered November 30, 2009.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)









[1] These statutes have been amended by the legislature
since the trial, but the changes do not affect our analysis.  For ease of
reference, we cite the most recent versions of the statutes.

 





[2] The specialist who examined C.C. testified that he
was obligated to report sexual abuse when his examination “absolutely indicates
sexual abuse.”  He testified that when he examined her, there was only one skin
tag.  While that could be consistent with sexual abuse, he testified that he
did not report it because there could be other explanations.  He testified that
a second skin tag, which indicated an additional injury, would be very abnormal
unless it was connected with specific diseases that C.C. did not have.  





[3] In its brief, the State lists the six exhibits and
describes them as note, letters, cards, and a hotel room key and describes who
the various communiqués are to and from.  The State does not describe the
contents of the written material.

 





[4] In some of the cases before this court, it does
happen that items that are in the appellate record, that is admitted at trial
and requested as part of the appellate process, nevertheless do not make it into
the record filed in this court.  This happens most often with items of physical
evidence, which court reporters often retain.  Because of this, and because the
record is vague as to where these pieces of evidence went after the trial court
determined they were inadmissible, we instructed the clerk of our court to
inquire of the court reporter if these items were in the record maintained at
the trial court.  They are not.  Furthermore, we note that the State argued in
its brief that this issue was not preserved because there had not been an offer
of proof and that the exhibits were not in the appellate record.  Appellant
filed a reply brief and responded to issues raised by the State in the fourth
issue, but did not respond to the preservation argument.