Opinion issued October 20, 2011.

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-10-00539-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



Irvin Ray Davis, Appellant

 

V.

 

The State of Texas, Appellee

 

 



On Appeal from the 184th District Court

 Harris County,
Texas

Trial Court Cause No. 1193809

 

 



Memorandum
Opinion

          A
jury convicted Irvin Ray Davis of his wife’s murder and assessed his punishment
at thirty-five years’ confinement.  See Tex. Penal Code Ann. § 19.02(b) (West
2011).  On
appeal, Davis contends that the trial court erred in: (1) denying his Batson challenge, (2) permitting the
State to conduct an in-court demonstration of the murder during the
guilt-innocence phase of trial, (3) admitting evidence of his subsequent
marriage, and (4) denying his requests for the jury to disregard the State’s
improper question and statements.  In
addition, Davis maintains that the evidence was insufficient to support the
jury’s finding that he did not act as the result of sudden passion.

          We
hold that the trial court did not err in denying Davis’s Batson challenge, in permitting the State’s in-court demonstration,
or in admitting evidence of Davis’s subsequent marriage.  Any error in denying Davis’s requests for
jury instructions to disregard was harmless. 
We also hold that the evidence is sufficient to support the jury’s
finding against sudden passion.  We
therefore affirm. 

Background

Davis and his wife, Sandra Sue Clark
Davis, shared a townhome with Sandra’s two sons, DJ and Xavier.  Sandra and Davis had a tumultuous relationship,
and they repeatedly had separated and reconciled.  

In November 2008, on the Friday after
Thanksgiving, the family shopped for Christmas gifts at a local mall.  During the trip, Sandra received a phone call
from her male cousin, and they discussed exchanging gifts.  Davis overheard the call.  He became upset because he did not want
Sandra to exchange gifts with another man even if he was a relative.  Davis and Sandra argued until they returned
home.  DJ thought that Davis remained
angry.  DJ spent the rest of the weekend
at his father’s home.  

Sandra went out with her friends on
Saturday evening.  Davis expected her to
return home by 2:00 a.m. but she did not until 11:00 a.m. the next
morning.  Sandra again went out with
friends on Sunday evening.  DJ returned
to Sandra and Davis’s home that night. 
Davis called Sandra’s older son, Xavier, to determine whether he
intended to come home.  Xavier found this
conversation unusual, but told Davis that he did not intend to come home.  Later that night, Xavier sneaked into the
house to avoid waking anyone.  Sandra
returned home at 1:30 a.m. that night.  

Around 6:30 a.m., DJ woke Sandra to
ask for lunch money.  He then left for
school.  Davis kept two knives on his
side of the bed as a defense against burglars. 
When Davis awoke, he confronted Sandra. 
He was concerned that she was seeing another man and would leave
him.  He questioned her about it.  She became angry.  

Davis testified that Sandra grabbed a
knife from her nightstand and moved toward him. 
He also grabbed a knife, and he stabbed her twenty-one times as she
approached him.  Davis stated that his
mind went blank.  He claimed he was
intensely angry, and he did not know how many times he stabbed her.  He told the jury that Sandra had overreacted
during the argument because she knew he was going to leave her for another
woman.  Davis married this woman after
Sandra’s death.    

Other witnesses testified about the
events leading to Sandra’s death.  Xavier
heard a noise, left his bedroom, and found his mother in the hallway at the top
of the staircase.  Sandra was crying, and
Xavier ran to her.  He grabbed her, and
he realized she was bleeding.  Xavier
then saw Davis, and Xavier testified that Davis looked surprised, because Davis
did not expect Xavier to be home.  Xavier
returned to his room to search for his cell phone.  He heard a loud noise, returned to the
hallway, and saw Davis standing at the top of the stairs.  Sandra was lying at the bottom of the
staircase.  Xavier pushed Davis out of
the way and ran to his mother.  His
mother was moaning, crying, and trying to move toward the front door.  

Xavier returned upstairs, retrieved
his cell phone, and then returned to Sandra. 
Davis was standing over her, punching her.  Sandra was crying for Davis to stop.  Xavier pushed Davis off of his mother and
moved her outside.  Xavier heard Davis
say at some point during the attack, “I told you I will kill you before I let
you leave me again.”  Xavier noticed many
injuries to his mother, including missing teeth and stab wounds to her side,
and he called 911.  Xavier remained
outside with Sandra, and a neighbor stopped and attempted to help.  Emergency personnel soon arrived and tended to
Sandra.  Davis walked out of the house,
appearing distraught, confused and dazed. 
Officers handcuffed Davis and placed him in a patrol car.  

Police recovered three knives from
the crime scene.  The autopsy report
revealed twenty-one stab wounds on Sandra’s body, as well as abrasions,
scrapes, lacerations and tearing of the skin on her face, hands and right
knee.  The medical examiner testified
that these injuries were consistent with defensive wounds, and that the facial
injuries were consistent with being struck with a fist.  Sandra died from stab wounds to her lungs and
heart.  

Batson challenge

          Davis
first contends that the trial court erred in denying his Batson challenge.  See Batson v. Kentucky, 476 U.S. 79, 106
S. Ct. 1712 (1986).  After the voir dire
examination in Davis’s trial, the State exercised one of its ten peremptory
strikes against prospective juror number 18, the only African-American within
the “strike zone” of remaining venirepersons. 
Davis challenged the peremptory strike of number 18, arguing that the
State impermissibly struck the venireperson on the basis of race.  The trial court asked the State to explain
its rationale for striking number 18.  The
State responded that number 18 told the prosecutor about a bad experience with
a police officer, that he had received and fought a traffic ticket for an
offense of which he was not guilty, had been convicted of writing a bad check
in 1983, and that he had wavered when asked if he thought the criminal justice system
was for punishment or rehabilitation. 
After the State explained its rationale, the trial court asked if Davis
wanted to put forth any other evidence or argument.  Davis’s defense counsel responded, “That’s
everything, Judge.  We wanted an
explanation.”  The court denied Davis’s Batson motion.  

Standard of Review and Applicable Law 

A reviewing court examines jury
selection from a cold record. Satterwhite v. State, 858 S.W.2d 412, 415 (Tex. Crim.
App. 1993). In other words, it is the trial court that has the
opportunity to view each venireperson’s demeanor and to evaluate his or her
credibility and, ultimately, is in the better position to pass on the strikes
for cause presented. Id. (citing Smith v. State, 676 S.W.2d 379, 387 (Tex. Crim.
App. 1984)). Consequently, we cannot reverse a trial court’s ruling on a Batson
challenge unless it is clearly erroneous.  See Gibson v. State, 144 S.W.3d 530,
534 (Tex. Crim. App. 2004). To hold that a trial court clearly erred, we must have a “definite and firm conviction that a
mistake has been committed.” Goldberg v. State, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d) (quoting Vargas v. State, 838
S.W.2d 552, 554 (Tex. Crim. App. 1992).  We
may not substitute our opinion for the trial court’s factual assessment of the
neutrality of the prosecutor’s explanation for exercising strikes, and we focus
on the genuineness, rather than the reasonableness, of the prosecutor’s
asserted nonracial motive.  Gibson, 144 S.W.3d at 534 & n.5 (citing Purkett v. Elem, 514
U.S. 765, 769, 115 S. Ct. 1769, 1771–72 (1995)).  In reviewing the record for clear error, we consider the entire
record of voir dire, and we need not limit ourselves to arguments or
considerations that the parties specifically called to the trial court’s
attention so long as our reasoning is manifestly grounded in the appellate
record.  Watkins v.
State, 245 S.W.3d 444, 448
(Tex. Crim. App. 2008).

A Batson
challenge gives rise to a three-step process. 
Purkett, 514 U.S. at 767, 115
S. Ct. at 1770–71.  First, the opponent
of a peremptory challenge must make a prima facie case of racial discrimination.  Id., 115 S. Ct. at 1770. 
Second, if the first step is satisfied, the burden of production shifts
to the proponent of the strike to provide a racially neutral explanation for
the strike.  Id.  Third, if a sufficient
explanation is provided, the court must decide whether the opponent of the
strike has proven purposeful racial discrimination.  Id., 115 S. Ct. at 1771. 


          Analysis 

Because the burden of persuasion is on the party
opposing the strike, the failure to challenge the State’s facially neutral explanation
renders the claim untenable.  Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App.
2002); see Ford v. State,
1 S.W.3d 691, 693–94 (Tex. Crim. App. 1999) (holding that defendant failed to
prove prosecutor’s explanation was pretext when he failed to cross-examine
prosecutor and did not offer evidence rebutting explanation); see also Pitte
v. State, 102 S.W.3d 786, 791 (Tex. App.—Texarkana 2003, no pet.) (holding
that defendant did not carry his burden of persuasion because he offered
nothing to prove prosecutor’s explanation was pretext); Flores v. State, 33 S.W.3d 907, 926
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (holding that because
defendant did not ask to cross-examine prosecutor or offer evidence refuting
race-neutral explanation for strikes, and she did not object to lack of
opportunity to do same, she forfeited review of issue on appeal).  Here, the State offered a number of reasons
for the strike: the venireperson’s bad experience with a police officer, a traffic
ticket, a bad check, and a wavering answer. 
Discriminatory intent was not inherent in the State’s reasons.  Davis offered no response to the State’s
race-neutral explanations for the strike.  Because Davis did not renew his
Batson challenge after the State
offered its race-neutral reasons, we hold that the trial court did not abuse
its discretion in rejecting Davis’s challenge. 
See Ford, 1
S.W.3d at 693–94; see also Pitte, 102 S.W.3d at 791; Flores, 33 S.W.3d at 926. 

Evidentiary
ISSUES

 

           Davis contends that the trial court abused its
discretion in allowing the State to conduct a misleading demonstration of
Sandra’s stabbing.  Davis also maintains
that the trial court abused its discretion in allowing the State to introduce
evidence of his subsequent marriage. 

Standard
of Review

We review a trial court’s decision to
admit or exclude evidence under an abuse of discretion standard.  Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App.
2002).  We will not reverse a
trial court’s ruling unless that ruling falls outside the zone of reasonable
disagreement.  Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  We must uphold the trial court’s ruling if it
is reasonably supported by the record and is correct under any theory of law
applicable to the case.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).




 

In-Court Demonstration

Davis testified that he did not know the
number of times he stabbed Sandra or the time that elapsed during the stabbing
because his mind was blank after the first stabbing.  The prosecutor instructed Davis to stab the
air twenty times while the prosecutor positioned himself in the place of
Sandra.  The prosecutor counted each stab
up to twenty.  Davis’s counsel objected
to the accuracy of the demonstration because it did not reflect Davis’s state
of mind at the time of the attack.  The trial
court overruled the objection.  

It is
proper to permit relevant courtroom demonstrations that accurately depict the
events they seek to illustrate.  Lewis v. State, 486
S.W.2d 104, 106 (Tex. Crim. App. 1972). 
Case law focuses on whether the demonstration was substantially similar
to the event.  See, e.g., Valdez v.
State, 776 S.W.2d 162, 168 (Tex.
Crim. App. 1989) (en banc); Wright v.
State, 178 S.W.3d 905, 919 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d);
Cantu v. State, 738 S.W.2d
249, 255 (Tex. Crim. App. 1987) (en banc); Key v. State, 149 Tex.
Crim. 200, 205, 192 S.W.2d 563, 566 (1946). 
The proponent of the demonstration must show that the conditions under
which the demonstration is conducted are sufficiently similar to the event
in question.  Valdez, 776 S.W.2d at 168; Cantu, 738 S.W.2d at 255.  It is not essential that the
conditions of the demonstration be identical—dissimilarities should be weighed,
but do not necessarily render a demonstration inadmissible.  See Valdez, 776
S.W.2d at 168.   All parts of the
demonstration must be supported by the evidence or testimony.  See Cantu, 738 S.W.2d at 255.  

Here, during the demonstration, Davis
positioned himself in relation to the prosecutor, and the prosecutor acted as
Sandra.  The men re-enacted the stabbing
motions.  The State’s purpose of
illustrating the time required to make twenty stabbing motions was to negate
Davis’s claims of self-defense and sudden passion.  The autopsy report indicated the number of
stab wounds, which is the same evidentiary support for the number of stabs
Davis made.  The State’s demonstration
was based on evidence and reasonable inferences from the evidence.  See Valdez,
776 S.W.2d at 168; Wright, 178 S.W.3d
at 919; see also Henricks v. State, 293 S.W.3d 267 (Tex. App.—Eastland 2009, pet. ref’d)
(demonstration of investigator’s theory on how victim was murdered was
admissible as it was supported by facts in evidence).  We hold that the trial court did not abuse
its discretion in allowing the demonstration.   
   

          Because
Davis objected only to the accuracy of the demonstration, his claims of error
based on Texas Rule of Evidence 401 and 403 are not preserved for appeal.  See Tex. R. App. P. 33.1; Goff v. State, 931 S.W.2d 537, 551 (Tex.
Crim. App. 1996) (en banc) (“Where his trial objections do not comport with his
arguments on appeal, appellant has failed to preserve error on those issues.”);
Martinez v. State, 867 S.W.2d 30, 35
(Tex. Crim. App. 1993) (affirming that issues on appeal must correspond to
objection raised in trial court); Lopez
v. State, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet.
ref’d) (requiring a specific objection in the trial court based on Rule 403 to
preserve error for appeal).  Because the
evidence raises an inference that Davis had a motive to murder Sandra, we hold
that the evidence is relevant.  The trial
court thus did not abuse its discretion in admitting it.

Evidence of Subsequent Marriage

Davis next maintains that the trial
court abused its discretion in admitting evidence of his marriage to another
woman after Sandra’s death.  During one
of his separations from Sandra, Davis had a relationship with a woman.  Davis married this woman about one month
after he was released on bond for Sandra’s murder.  The State produced documentation proving
Davis’s marriage.  Davis objected to the
relevancy of this evidence.  

Any evidence that is both material
and probative is relevant. Tex. R. Evid.
401.  Evidence is material if it
influences consequential facts.  Mayes v. State, 816 S.W.2d 79, 84 (Tex. Crim. App. 1991).  Evidence is probative if it tends to make the
existence of a material fact more or less probable than it would be without the
evidence.  Miller v. State, 36 S.W.3d 503,
507 (Tex. Crim. App. 2001).  It does not have to be prima facie
evidence that some fact exists or establish that it is more likely than not
that the fact exists.  City of Dallas v. Cox, 793 S.W.2d 701,
730–31 (Tex. App.—Dallas 1990, no writ). 
If evidence alters the probabilities involved to any degree, it is
relevant.  Montgomery v. State, 810 S.W.2d 372, 376
(Tex. Crim. App. 1990).  Evidence which
is not relevant is inadmissible.  Tex. R. Evid. 402. 


          The
State offered evidence of the marriage to show Davis’s motive and refute his
claims of self-defense and sudden passion. 
Davis began his relationship with his new wife while he was separated
but still married to Sandra.  The State
contended that this relationship made Davis’s claims of self-defense and sudden
passion less likely because his desire to be free of his marriage to Sandra and
to marry his new wife provided motive for murdering Sandra.  Although motive is not itself an element of a
crime, it is relevant because it tends to make it more likely that the accused
committed the crime.  Massey v. State, 933 S.W.2d 141, 154
(Tex. Crim. App. 1996); see, e.g., Temple v. State, 342 S.W.3d 572 (Tex.
App.—Houston [14th Dist.] 2010, no pet.) (holding
that evidence of defendant’s affair during marriage may provide motive for
murder of spouse); Reaves v. State,
970 S.W.2d 111, 118 (Tex. App.—Dallas 1998, no pet.) (holding that evidence of
wife’s extramarital affair was admissible under Rules 401 and 403 to show
motive to kill and to show wife had reason to murder her husband and claim
self-defense).  Davis objected only to
the relevancy of the evidence in the trial court; therefore, any claim of error
based on Rule 403 or on Rule 404 that the evidence was unduly prejudicial is
not preserved for appeal. See Tex. R. App. P. 33.1; Goff, 931 S.W.2d at
551; Martinez, 867 S.W.2d at
35.

Denied Requests for Jury Instruction

          Davis
claims the trial court erred in denying his requests that the trial court
instruct the jury to disregard several questions for which the trial court had
sustained objections.  

 Improper Question and Statement
during Testimony     

          The
prosecutor asked Davis if he was aware that the jury’s job was to determine if
he acted in self-defense.  Davis objected
that this question was improper.  The
trial court sustained the objection, but denied Davis’s request to instruct the
jury to disregard.  Later, during
cross-examination, the prosecutor stated that Davis’s testimony had not been
consistent during the trial, and Davis objected that the prosecutor’s statement
was argumentative and a misstatement. 
Again, the trial court sustained the objection, but denied Davis’s
request to instruct the jury to disregard. 


          We
hold that any error in refusing to ask the jury to disregard matters to which
the court had sustained objections was harmless, because it did not affect
Davis’s substantial rights.  We disregard
any non-constitutional error unless the error affects the defendant’s
substantial rights.  King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997).  A substantial
right is affected when the error had a substantial injurious effect or
influence in determining the juror’s verdict. 
Id.  If we have a fair assurance that the error
did not influence the jury, or had only a slight effect, then we must not reverse
the conviction.  Johnson
v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).  

          Here,
the prosecutor’s question asked Davis whether it was the jury’s job to
determine if Davis acted in self-defense. 
Davis did not answer the question; although argumentative, nothing about
the question was inherently influential in determining the verdict.  We hold that Davis has failed to show harm
from the trial court’s refusal to instruct the jury to disregard.  

Similarly, Davis has not shown that
the prosecutor’s statement that Davis’s testimony about the murder had changed
many times had an injurious effect.  When
the prosecutor first asked Davis about his argument with Sandra, Davis stated
that she was angry over their financial issues and because he suspected she was
seeing another man.  Davis later
testified that Sandra was upset because she found out Davis had been with
another woman.  Davis admitted this
discrepancy.  We hold that this statement
did not influence the jury’s verdict so as to affect Davis’s substantial
rights.  Davis admitted to stabbing his
wife and continuing to stab her as she tried to escape, and he testified that
no one else could have stabbed her.  Some
evidence existed that Davis gave different accounts about the reason for the
fight.  Any error in refusing to tell the
jury to disregard the statement was harmless. 


Closing Argument

          Finally,
Davis observes that the prosecutor attacked him over the shoulders of his
defense counsel during the State’s closing argument.  When speaking to the jury, the prosecutor
said, “if [defense counsel] is going to tell you with
a straight face…” and Davis objected. 
The trial court sustained the objection, but again denied Davis’s
request to instruct the jury to disregard the statement.  Also, during the State’s closing argument,
when he referred to Davis’s testimony, the prosecutor said, “He told you
himself, one of the only things I believe on this witness stand out of his
mouth—,” and Davis objected to the prosecutor giving his personal opinion.  The trial court sustained this objection and
once again denied Davis’s request to instruct the jury to disregard it. 

In closing arguments, the approved
general areas of argument are: (1) summation of the evidence, (2) reasonable
deduction from the evidence, (3) answer to argument of opposing counsel, and
(4) plea for law enforcement.  Hathorn
v. State, 848 S.W.2d 101,
117 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 932, 113 S. Ct. 3062 (1993). Even when an argument
exceeds the permissible bounds of these approved areas, it will not constitute
reversible error unless, in light of the record as a whole, the argument is
extreme or manifestly improper, violative of a mandatory statute, or injects
new facts harmful to the accused into the trial proceeding.  Todd v. State, 598 S.W.2d 286, 296–97 (Tex. Crim. App.
1980).  The remarks must have been
a willful and calculated effort on the part of the State to deprive appellant
of a fair and impartial trial.  Wesbrook v. State, 29
S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc).  The Court of Criminal Appeals held that “the
harm standard for nonconstitutional errors—found in Texas Rule of Appellate
Procedure 44.2(b)—applies.”  Martinez v. State, 17
S.W.3d 677, 692 (Tex. Crim. App. 2000). 


          Davis’s objections cut off
the prosecutor mid-sentence, and the prosecutor did not introduce any new facts
to the jury in making the statements.  In
both statements, the prosecutor attacks the veracity of Davis’s testimony.  See Smith
v. State, 898 S.W.2d 838, 846 n.8 (Tex. Crim. App. 1995) (noting that State
has right during closing argument to “attack the veracity of a defendant who
takes the stand”); Greer v. State,
523 S.W.2d 687, 690–691 (Tex. Crim. App. 1975) (holding that where
defendant takes witness stand and his testimony is clearly contrary to State’s
evidence, it is not reversible error for prosecutor to attack veracity of
defendant).  The prosecutor’s statements were
not the result of a willful and calculated effort by the State to deprive Davis
of a fair trial.  We conclude that any
error in refusing to instruct the jury to disregard them was harmless
error.  

Sufficiency of Evidence of
Jury’s negative finding on the issue of sudden passion

 

          Davis
contends the evidence is factually insufficient to support the jury’s finding
that he did not act under the influence of sudden passion.

Standard
of Review and Applicable Law

          At
the punishment phase of a murder trial, a defendant may reduce a murder charge
from a first-degree felony to a second-degree felony by proving by a preponderance
of the evidence that “he caused the death under the immediate influence of
sudden passion arising from an adequate cause.” See Tex. Penal Code Ann. § 19.02(d) (West
2011); see also Hernandez v. State,
127 S.W.3d 206, 211–12 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d)
(holding that defendant bears burden at punishment phase to prove issue of
sudden passion by preponderance of evidence). 
“‘Sudden passion’ means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.”  Tex. Penal Code Ann. § 19.02(a)(2).  “‘Adequate
cause’ means cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the
mind incapable of cool reflection.”  Id.
§ 19.02(a)(1); see
also Hernandez, 127 S.W. 3d at
211 (holding that ordinary anger or causes of defendant’s own making are not
legally adequate causes). 

          In
Brooks, the Criminal Court of Appeals
held that the Jackson v. Virginia standard
is the only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt.  Brooks v.
State, 323 S.W. 3d 893, 895 (Tex. Crim. App.
2010).  However, the Jackson v. Virginia standard does not
apply to a criminal defendant’s factual sufficiency challenge to the jury’s negative
finding of an issue that the defendant had to prove by a preponderance of the
evidence; rather, the factual sufficiency standard
announced in Meraz is appropriate for
review of issues, such as affirmative defenses, on which the defendant has the burden
of proof by the preponderance of the evidence. 
See Brooks, 323
S.W.3d at 924 n.67 (Cochran, J., concurring); see also Meraz v. State, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990) (holding that the proper
standard for review of factual sufficiency challenges to negative finding on
issue that defendant had to prove by preponderance of the evidence is not Jackson v. Virginia standard); Zuniga v.
State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (holding that Meraz standard was suitable for
sufficiency reviews regarding affirmative defenses because burden of proof on
defendant is preponderance of evidence), overruled
on other grounds by Watson v. State, 204 S.W.3d 404, 416–17 (Tex. Crim.
App. 2006).  Accordingly, we apply the Meraz
standard of review to a jury’s negative answer on sudden passion.  Cleveland, 177 S.W.3d 374, 390–91 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d) (applying the Meraz
standard as cited in Zuniga, 144
S.W.3d at 482); see also Brooks, 323 S.W.3d at 924 n.67.

          We
consider whether the judgment is so against the great weight and preponderance
of the evidence so as to be manifestly unjust. 
Meraz, 785 S.W.2d at 154–55. 
We review all of the evidence neutrally, but we do not intrude on the
factfinder’s role as the sole judge of the weight and credibility given to any
witness’s testimony.  Cleveland, 177 S.W.3d at
390–91.




Analysis

          Davis
contends that he stabbed Sandra during an argument between the couple, because
he was intensely angry over her suspected infidelity.  Davis admitted that Sandra had not
acknowledged any infidelity, and he also described his argument with Sandra as
“minor.”  Davis also claimed that he
stabbed Sandra in self-defense.  He
testified that Sandra retrieved a knife and moved toward him.  He feared Sandra was going to stab him, so he
grabbed a knife and stabbed her.  

The jury’s finding against sudden
passion here depended largely on rejecting Davis’s version of the events.  The jury was free to disbelieve Davis’s
account.  The jury is the sole judge of
the weight and credibility given to any witness’s testimony.  See Cleveland, 177 S.W.3d at 390–91; see
also Trevino v. State, 157 S.W.3d 818, 822 (Tex. App.—Fort
Worth 2005, no pet.) (holding that jury is free to
make its own determination of defendant’s credibility and reject defendant’s
version of events if it did not believe he was telling truth).  Evidence of Davis’s actions
before and during the stabbing support a finding of premeditation and planning,
not sudden passion.  Nance v.
State, 807 S.W.2d 855, 861 (Tex.
App.—Corpus Christi 1991, pet. ref’d) (holding evidence of premeditation is
sufficient to support finding of no sudden passion).  In particular, Davis called Xavier to
determine if Xavier planned to return home on Sunday evening, and he waited
until DJ had left for school to attack Sandra. 
He had two knives in his bedside table. 
During the attack on Sandra, he was surprised to see Xavier and said to
Sandra, “I told you I will kill you before I let you leave me again.”  Given this evidence, the jury reasonably
could have found that Davis did not act out of a degree of anger, rage,
resentment, or terror sufficient to render the mind incapable of cool
reflection.  See Bradshaw v. State, 244 S.W.3d 490, 503 (Tex.
App.—Texarkana 2007, pet. ref’d) (the discovery of a spouse’s extramarital
affair was not adequate cause for murder); see
also Cleveland, 177 S.W.3d at 390 (no adequate
cause arising from the immediate influence of sudden passion was found where a
defendant’s wife served him with divorce papers, and he subsequently stabbed
her to death).  The jury’s finding is not
so against the great weight and preponderance of the evidence so as to be
manifestly unjust.  See Meraz, 785 S.W.2d at 54–55.  Accordingly, we hold that sufficient evidence
supports the jury’s negative finding on the issue of sudden passion. 




 

Conclusion

We hold that the trial court did not
err in denying Davis’s Batson
challenge or in admitting the demonstration evidence and evidence of Davis’s
subsequent marriage.  We further hold
that the trial court did not commit reversible error in failing to instruct the
jury to disregard questions and statements to which it had sustained
objections.  Finally, we hold that the
evidence supports the jury’s negative finding on the issue of sudden passion.  We therefore affirm the judgment of the trial
court.  

 

 

                                                          Jane
Bland

                                                          Justice

 

 

Panel consists of Chief Justice
Radack and Justices Bland and Huddle.

Do not publish.  Tex. R. App. P. 47.2(b).